LA FAVE, Plaintiff in error, vs. THE STATE, Defendant in error.

*December 7, 1939—January 16, 1940.*

For the plaintiff in error there was a brief by *Haley, Edwards & De Mark* of Racine, and oral argument by *A. S. De Mark*.

For the defendant in error there was a brief by the *Attorney General, Richard G. Harvey, Jr.,* district attorney of Racine county, and *W. W. Storms,* assistant district attorney, and oral argument by *Mr. Wm. A. Platz,* law examiner, *Mr. Harvey,* and *Mr. Storms*.

FOWLER, J.   The defendant was arrested on the evening of April 25th and taken to the police station on suspicion of having set fire to the dwelling house of Robert Holden early in the morning of that day.   On April 26th, after questioning by police officers he wrote out three separate statements in his own handwriting, which are exhibits in the record.   In Exhibit A he stated his doings on the night of April 24th-25th.   He stated that after having a couple of drinks with a fellow who drove his car he got a pint of whiskey at a tavern and went to Holden's house to see him; rang the bell; no one answered.   He thought maybe Holden

didn't want to see him, so he took off a storm window and crawled through the window and might have lighted a match to see or might have lighted a cigarette, he was not sure. He might have walked around, was pretty sure he fell down; did not know how long he was in the house. On leaving he put on the storm window and did not know whether he went home right away or not. The reason he went to see Holden was to get him to talk to his wife for him.

Later the same day he wrote out another statement, Exhibit B in the record. In it he stated he had been drinking heavily; began at noon and was in several taverns; went to the house of Holden to see him; he rang the bell; there was no answer. He crawled through the window of Holden's bedroom. He could not see anybody; had a hard time walking; fell on the floor, and a bottle fell out of his pocket; lit a match to find the bottle and it (meaning spilled whiskey) started to burn; tried to put fire out, and thought it was out; did not know how long he was there and thought he went from Holden's house home.

Later in the day he made a third statement, Exhibit C in the record, in which he stated that to the best of his knowledge after entering the Holden house he did not see anybody and started walking around. He was "falling around" and was about to take a drink and the cap fell off the bottle and rolled under the bed. He started to look for it with a match. When the bed clothes started fire he tried to put it out, and to the best of his knowledge it was out. He did not know for sure if he really spilled any whiskey or not. He then went home. He stated in each statement that it was made of his own free will and without his being promised anything or threatened in any way.

On the morning of the 27th complaint charging arson was made before a court commissioner, a warrant was issued, he was taken before the commissioner, waived preliminary examination, and was bound over to the municipal court for

trial. Not being able to give bond the officer took him into custody. On the same morning he was taken before the municipal court and arraigned at 10:45 a. m., and on an information charging that he "unlawfully, feloniously, and maliciously set fire to and caused to be burned" the Holden dwelling house, and entered a plea of guilty.

The municipal court docket shows: That at the time of entering the plea the defendant stated his age; that he had trouble at home, had lost his WPA job; his wife had left him; he started drinking and got "some crazy idea" into his head; had been drinking pretty heavily since his wife left him; never had been in trouble before; also that the fire chief stated he was called to the fire at 1:51 a. m.; the bedroom was almost gone; about $400 damage to the building; $300 to contents; also that the district attorney stated the defendant had no record; he wanted a chance to start over; if he would straighten out his wife would take him back and he (district attorney) believed she would if he lived up to her conditions; he should be eligible for parole. On May 1st the court imposed an intermediate sentence of one to two years' imprisonment in the state's prison. No counsel was with the defendant before the committing magistrate, or before the court when he pleaded guilty or when he was sentenced, and the defendant had not seen any counsel up to the time of his sentence. On May 2d the court ordered the district attorney and the sheriff to show cause why the court should not grant the defendant permission to withdraw his plea of guilty, employ counsel, and have a preliminary examination. The motion was supported by the defendant's petition, sworn to before Mr. Edwards, who appeared for the defendant upon the hearing pursuant to the order to show cause. The petition states that the defendant stated to the police that he was not guilty of any such crime as arson; that on the night of the fire he was under the influence of liquor and sedatives; that he was informed that he did go to the

Holden residence and entered the house, but that he does not know why he went there or what happened while he was there; that he knew the Holden family and was on friendly terms with them; that if he caused a fire to start it was by accident and without intent to commit any crime.

The petition further stated that the defendant was questioned at length by the police officers and several men in the state fire marshal's office during April 25th and again on April 26th, and was urged by them to admit he was guilty of arson and plead guilty, and was told by them if he did he would undoubtedly be paroled by the court for a year, and that that was the extent of the punishment the court would impose; that the defendant's brother-in-law, Mr. Peterson, also urged him to admit he was so guilty and to so plead, and that the court would parole him if he so did; that Mr. Storms, assistant district attorney, told the defendant that if he would plead guilty he (Storms) would recommend that he be paroled, and that the district attorney did so recommend; that the defendant entered the plea of guilty relying wholly on the assurances stated; that the defendant for several years had been addicted to excessive use of intoxicating liquors, and for two years had been taking sedative drugs to the extent that he believed his mind was weakened, and believed that such condition was largely responsible for his pleading guilty.

An affidavit of the defendant was presented in connection with his petition, for the most part reiterative of the petition, but containing the additional statement that when taken into custody he was under the influence of intoxicating liquor and sedative drugs; that he was questioned the entire day and part of the evening of April 26th by several police officers while in custody; that he requested the police officers to permit him to use the telephone to call his doctor and a lawyer, but his request was refused, and he was told that he could call a doctor and a lawyer when they got through questioning him; that the questioning of the police officers con-

tinued the entire day of April 26th; that he repeated his requests on that day to call his lawyer, but his request was refused, and that he was not permitted to use the telephone until the evening of the 26th when he was permitted to call his sister, Mrs. Peterson; that he was not familiar with legal procedure and believed that if the district attorney would recommend it he would be paroled and not sent to prison.

In reply to the petition the affidavit of Mr. Storms was presented stating the arrest of the defendant on April 25th on suspicion of having committed arson; that during the 26th of April the defendant signed the three statements above referred to; that the defendant told affiant he wished to enter a plea of guilty to the charge of arson; that affiant questioned the defendant, his sister Mrs. Peterson, his brother-in-law, Mr. Peterson, and the detectives, and police officers who investigated the alleged crime; that affiant was present on several occasions when the defendant was questioned by police officers and officers of the fire marshal's department, and affiant on each occasion told the defendant to tell only the truth as to the facts connected with the alleged offense, and that the defendant was at no time during such questionings urged to plead guilty unless he was guilty and did so freely and voluntarily; and that when affiant told the defendant that he would recommend that he be placed on probation, he also told him that he could make no promise as to what the court would do, but that the sentence was wholly for the court to determine, and that affiant believed the defendant pleaded guilty freely and in recognition of his guilt and under no misapprehension as to what his sentence might be.

Such was the situation when the court imposed the sentence upon the defendant. It is to be noted that the defendant did not move for leave to withdraw his plea of guilty until the day after he was sentenced. At the time of denying the motion the court made an oral statement of record that shows that he fully understood the situation as pre-

sented by the record before him. He stated that he knew the police officers before whom the statements were signed which contained their signatures as witnesses, and knew Captain Harnett, who was mentioned by the defendant in his petition, and knew that if defendant had asked to have a lawyer he would have been permitted to have one, and that he could have had the services of a doctor if he had needed one.

If the matter still thus stood, the defendant's position would be somewhat better than it now is. But the defendant thereafter moved for a new trial on the grounds that the court erred in denying the motion for leave to withdraw the plea and to have the record sent back for a preliminary hearing; that the information is invalid; and that it appeared that justice had not been done. The writ of error brings up for review the order of the court denying this motion. In opposition to the motion for a new trial the affidavit of Officer Olson, before whom the defendant's statements while in custody were signed, was submitted, in which he denied that the defendant asked for a lawyer while in custody, but stated that he did ask for his brother-in-law, Mr. Peterson, a game warden of Racine county, and that the defendant stated he would be freer to talk to him alone; that Peterson's residence was called and his wife, the defendant's sister, was told to have Peterson get in touch with the police station on his return home, and that Peterson came to the station about 6 p. m. on April 25th and conferred with the defendant alone and in the presence of affiant and other officers, and that after the defendant had conferred with Peterson alone his three written statements were voluntarily made, without any threats or promises being made or any inducements offered; that affiant and other police officers told the defendant that he should tell only the truth, and that affiant was present during every time the defendant was questioned except for a few minutes; that the defendant did ask for a doctor or that he be sent to a hospital on April 25th,

but nothing appeared to be wrong with him and he was told that if he became ill medical attention would be secured for him.

The affidavit of Mr. Storms was also presented which corroborated the statements of Mr. Olson as to the sending for Mr. Peterson, and in respect to what occurred when defendant asked for a doctor, affiant stated that defendant was asked when he had last been treated by a physician and answered it was in October, 1938; that when defendant was asked what his trouble was he said nervousness, and that nothing was apparently wrong with the defendant physically.

Neither affidavit in opposition to the motion denied that the defendant was questioned at great length and many times by the officers, or that he was given by them to understand that he would be paroled on the recommendation of the district attorney. And there is no denial that the defendant was intoxicated when he entered the building.

It is quite clear from the record that the defendant had never received the advice of counsel when he entered his plea of guilty or when he was sentenced, and it is also quite clear that there was nothing in the three written statements made by the defendant to show that the defendant intentionally set fire to the building. Any competent attorney would have advised the defendant that the facts stated by him in these statements did not constitute arson. There is no fact stated by the defendant in those statements and no fact is shown to have been stated by him to the officers or the district attorney that would of itself or together with all other facts stated by him constitute the crime of arson. No fact or facts were before the court when the instant motion was denied that showed anything more than that the defendant somehow accidentally but not intentionally set the fire. No motive for setting fire to the building was suggested by those facts. The day after the sentence was imposed the defendant through counsel moved to withdraw his plea and to appear by counsel. Upon the whole situation we consider

that the court should have granted the motion under review and that, even though the granting of motions to withdraw a plea of guilty is discretionary, it was an abuse of discretion not to vacate the judgment imposed in the instant case and permit the withdrawal of the plea and representation by counsel.

It is quite true that the court was justified in not believing the claim of the defendant that permission to see a doctor and get counsel was denied him by the police officers, and was justified in believing that the conduct of the police officers and the district attorney had been entirely proper. They may have possessed information of a circumstantial character to indicate that the defendant was not intoxicated when he entered the house, or that setting the fire was his intentional act. But there was nothing before the court to justify the court in believing that the defendant was guilty of arson. The contradictory and uncertain nature of the written statements of the defendant indicated a state of mind such as to negative mental competency or knowledge of law such as to enable him to determine whether under the facts he was guilty of arson. It does not appear that these statements were before the court when the sentence was imposed, and the imposition of the sentence was proper on the record as it existed at that time, but those statements were before the court when both motions were decided, and as such facts as were then before the court negatived arson, the court should have granted the defendant the right secured to him by sec. 7, art. I, Const., which provides that "in all criminal prosecutions the accused shall enjoy the right to be heard by himself and counsel."

It is the common practice in the circuit courts of the state, and in trial courts of criminal jurisdiction elsewhere, so far as we are advised, to inquire of a defendant not represented by counsel on arraignment upon felonies before accepting a plea of guilty, whether he has had advice of counsel, and if

he has not, to delay entry of the plea until he has had the opportunity to secure it if he so desires. Nonconformance to such practice does not necessarily constitute error, but it is a salutary and commendable practice. Conformance to it in the instant case would perhaps have avoided the error in the proceedings after imposition of the sentence.

We accept as contended by the state that the granting of leave to withdraw a plea of guilty is discretionary with the court. *State v. Dowling,* 205 Wis. 314, 316, 237 N. W. 98, so holds. We also accept as the law application to the exercise of that discretion the state's quotation from 14 Am. Jur. Crim. Law, p. 961, § 287:

"As in other cases of discretionary power, no general rule can be laid down as to when a defendant will be permitted to withdraw his plea. The decision in each case must depend to a great extent on the particular attendant circumstances."

Our ruling may well be rested on that statement and the constitutional provision above quoted. We perceive nothing in *State v. Dowling, supra,* inconsistent with our instant ruling. In that case the trial court denied the defendant's request for leave to withdraw a plea of guilty, and this court sustained the ruling as not an abuse of discretion. On the whole, the case seems to support the instant ruling, in saying that "in view of the range of the penalty prescribed by statute for the offense charged, and the fact that Dowling appeared without counsel when he pleaded guilty, it would seem that the trial court in its discretion might well have granted that motion."

The contention of the defendant that a new trial should have been granted because the information is invalid is without merit. The defect claimed is that the information did not name the owner of the dwelling house. If ownership is material, it here appears. This would be sufficient to support conviction. *Sprague v. State,* 188 Wis. 432, 206 N. W. 69; *Perrugini v. State,* 204 Wis. 69, 234 N. W. 384.

*By the Court.*—The order of the municipal court is reversed, and the record is remanded with directions for further proceedings in accordance with the opinion.

The warden of the Wisconsin state prison is commanded forthwith to remand the custody of the plaintiff in error to the sheriff of Racine county to be held by him until the further direction of the trial court.