## No. 16,546.

### CHAMPION *v*. THE PEOPLE.
(236 P. [2d] 127)

Messrs. McNICHOLS, DUNN & NEVANS, for plaintiff in error.

Mr. DUKE W. DUNBAR, Attorney General, Mr. H. LAW-RENCE HINKLEY, Deputy, Mr. FRANK A. WACHOB, Assistant, for the people.

*En Banc.*

MR. JUSTICE MOORE delivered the opinion of the court.

PLAINTIFF in error, to whom we hereinafter refer as defendant, was named defendant in an information filed July 7, 1949, in the district court of Gilpin county, Colorado. The information contained two counts. Omitting formal parts thereof, it was charged in the first count that on July 4, 1949, defendant "did unlawfully, wilfully, and feloniously make an assault in and upon one Edgar Heselbarth, Jr., with intent to disfigure and disable a member of the body of Edgar Heselbarth, Jr., to-wit: an eye of Edgar Heselbarth, Jr. * * * ." In the second count it was charged, in substance, that at the same time and place defendant committed an assault and battery upon the said Edgar Heselbarth, Jr.

July 9, 1949, defendant was arraigned. The record shows that each count of the information was read to him in open court and that he entered a plea of guilty to each of them. The court, having ascertained that the age of defendant was twenty-four years, informed him to the effect that under the first count of the information he could be sentenced to a term of not less than one, or more than fourteen, years in the penitentiary, and under the second count he could be sentenced to a term not exceeding one year in the county jail. The court then stated, "Now, having advised you of the consequences of your pleas of guilty, do you still desire to plead guilty to both counts"? The defendant answered in the affirmative and the pleas of guilty were permitted to stand. The court thereupon heard the evidence which was offered by the Deputy District Attorney, to which reference will hereinafter be made. Defendant made application for probation, and a special probation officer was appointed and made his report. Probation was granted to the defendant on July 14, 1949.

In April, 1950, counsel for defendant filed a "Motion to

Vacate Judgment and Conviction and for Leave to Withdraw Pleas of Guilty." The grounds of said motion, in substance, were that the defendant had not been served with a copy of the information at or prior to the time of arraignment; that the nature of the charges filed against him was not explained to him; that he entered pleas of guilty to both counts of said information without comprehending or understanding the significance of the entry by him of said guilty pleas; that he was not represented by counsel and was not offered an opportunity to be represented by counsel of his own choice or counsel appointed by the court; that he was not adequately cautioned and advised by the court concerning his constitutional and statutory rights as a defendant in a criminal case; that prior to the arraignment of defendant the Deputy District Attorney, who filed said charge, had advised him not to employ counsel and that he would be granted probation if he entered pleas of guilty to both counts of said information; that defendant did not realize that he was accused of a felony charge, did not comprehend the seriousness of the charges, and was not advised thereof by the Deputy District Attorney; and that he was completely unfamiliar with the technical legal implications of a plea of guilty to the charges preferred against him.

It further was alleged that the Deputy District Attorney, prior to said arraignment, advised the mother of said defendant not to employ an attorney for him, and that said Deputy District Attorney stated to her that he would take care of the matter and that defendant would be granted probation and would be released from custody in the immediate future; that defendant did not understand the legal effect of being placed on probation and was under the impression that the approval of his application for probation would wipe out the alleged offenses and was tantamount to a dismissal of said charges; and that it was not until after the probation hearings that he "began to realize the significance of the situation"; that the defendant was in fact innocent of the

charges and had a meritorious defense to each count of said information and desired to avail himself of his "constitutional and statutory rights to a trial by jury." The said motion was supported by the affidavits of defendant and his mother. A hearing was held on May 3, 1950, upon this motion and the testimony of defendant and his mother, together with that of the Deputy District Attorney who handled the case for the people, was taken. Defendant's testimony and that of his mother fully supported the facts alleged in the motion. The court denied the motion and defendant brings the case here for review.

■ The trial court had not lost jurisdiction to entertain the motion, for the reason that no sentence had been imposed and jurisdiction of the court continued throughout the period of probation. The testimony, heard by the trial court when the pleas of guilty were accepted, was not given by the person alleged to have been the victim of the alleged assault, but was supplied by a witness who admittedly was present at only a portion of the altercation between defendant and his alleged victim. The witness himself became involved in the fight and admitted knocking defendant down. The testimony of this third party tends to show that there was a fight between defendant and Edgar Heselbarth, Jr., growing out of a minor automobile accident at 11:30 P.M. on July 4, in Central City, Colorado, in a dark alley off Eureka street. Heselbarth suffered a serious injury to one of his eyes as a result of a blow struck by defendant. The Attorney General, in his answer brief, after quoting in full all the evidence that was offered following the pleas of guilty, states: "In the instant case, there seems to be a complete absence of evidence in the record to sustain the first count." The conclusion of the Attorney General is that the evidence which was received by the trial court negatived the existence of *specific intent,* proof of which was necessary and essential to establish the guilt of defendant

upon the charge contained in the first count of the information.

At the time the pleas of guilty were accepted, and before any application for probation was filed, the Deputy District Attorney called the sheriff of Gilpin county as a witness. He knew nothing whatever about the transaction upon which the information was based and testified that he had known the defendant "ever since he was a little kid." He said defendant had no criminal record and that "he has never had any trouble in this county and he has a very good navy record." He also stated that defendant was three years in the navy and concluded his testimony with the statement, "He has always been a very nice boy around here and has never had any trouble before." We direct attention to this testimony for the reason that it throws light upon the question as to whether defendant entered guilty pleas under the belief that the Deputy District Attorney had promised probation and was bringing forward this testimony in fulfillment thereof. It appears from the record that defendant is a married man and is the father of two children whose ages were six months and nineteen months respectively at the time of the hearing on the motion to vacate the pleas of guilty. The Deputy District Attorney testified at the hearing on the motion that he had talked with defendant while he was in jail, and that the conversation related to the nature of his plea and probation. He said he told defendant that, "It was the practice of the Courts in most cases, where there was no record, to grant probation, but as to his, I didn't know until the Court got to it. Under the circumstances, he had a good chance, that was the nature of that conversation." On cross-examination he stated: "The only thing I tried to do was help him as any human being would. I did my duty as I saw it." His closing statement in answer to the question as to whether he advised defendant "as District Attorney or as a friend" was answered, "I advised him only as far as I saw fit to help." However well intentioned the interest

of the prosecutor might have been, it is clear that the defendant was influenced to enter pleas of guilty as a means of avoiding expense and further trouble, in reliance upon the impression unquestionably created in his mind that the prosecutor would see to it that he got probation.

Questions to be Determined.

■ First: *Was the order of the trial court denying the motion of defendant to withdraw his pleas of guilty, a final order which is subject to review by this court?*

This question is answered in the affirmative. The denial of defendant's motion operated with finality to fix his status as a person duly convicted of a felony. The fact that he had been admitted to probation and that the trial court retained jurisdiction of the cause in connection therewith, and the further fact that no sentence has been imposed upon the convictions under the pleas of guilty, do not deprive defendant of the right to seek review of the court's action in denying his motion to vacate the pleas of guilty.

■ Second: *Did the trial court abuse its discretion in denying the motion to vacate judgment and conviction and for leave to withdraw pleas of guilty?*

This question is answered in the affirmative. Generally, it is well settled that a motion by a defendant to withdraw a plea of guilty is addressed to the sound discretion of the trial court. *Abshier v. People,* 87 Colo. 507, 289 Pac. 1081. In 14 American Jurisprudence, page 961, section 287, we find the following statement: "As in other cases of discretionary power, no general rule can be laid down as to when a defendant will be permitted to withdraw his plea. The decision in each case must depend to a great extent on the particular attendant circumstances. Generally, however, it may be said that the withdrawal of a plea of guilty should not be denied in any case where it is in the least evident that the ends of justice will be subserved by permitting not guilty to be pleaded in its place. The least surprise or influence caus-

ing a defendant to plead guilty when he has any defense at all should be sufficient grounds for permitting a change of plea from guilty to not guilty. Leave should ordinarily be given to withdraw a plea of guilty if it was entered by mistake or under a misconception of the nature of the charge; through a misunderstanding as to its effect; through fear, fraud, or official misrepresentation; was made involuntarily for any reason; or even where it was entered inadvisedly, if any reasonable ground is offered for going to the jury."

The following appears in 22 C.J.S., page 642, section 421: "Accused should be permitted to withdraw a plea of guilty which is contrary to the truth, * * *. Also, the court should permit the withdrawal of the plea where it appears that there is doubt of the guilt of accused; * * *."

In the case of *Gearhart v. People,* 113 Colo. 9, 154 P. (2d) 47, we quoted with approval from *Abshier v. People, supra,* as follows: "The discretion thus reposed in the court 'should be exercised liberally in favor of life and liberty,' but 'where it is plain that substantial justice will not be promoted, or the substantial rights of defendant prejudiced, the application for leave to withdraw the plea should be denied.' "

■ The Attorney General concedes that the evidence received following the pleas of guilty was insufficient to establish guilt on the charge of assault with intent to commit mayhem, and suggests that the conviction upon that count be vacated, and that said count be dismissed. We agree that the evidence adduced was insufficient to establish guilt of the charge, but dismissal thereof does not follow. The only purpose of taking evidence following entry of a plea of guilty is to show the "aggravation and mitigation of the offense" as required by the provisions of section 482, chapter 48, '35 C.S.A. It is not necessary that all essentials of an offense shall be established by evidence following a plea of guilty, because the purpose of the inquiry is to reveal "aggravation" or "mitigation" of the offense for the guidance of the court in the

imposition of sentence. Following the entry of a plea of guilty, the evidence proper for the consideration of the court is not limited to that which would be admissible upon a trial following a plea of not guilty. *Smith v. People*, 32 Colo. 251, 75 Pac. 914. So in this case, other evidence not offered concerning aggravation or mitigation may be available upon a trial of the question of guilt which was deemed unnecessary by reason of the pleas of guilty.

However, the state of the evidence as presented is a matter for consideration for the reason that it is wholly consistent with the position of the defendant as disclosed by the motion to vacate the guilty pleas, and is a circumstance of considerable weight in determining whether the trial court abused its discretion in refusing to set aside the pleas of guilty. Even upon the count charging the offense of assault and battery the evidence before the court might have failed to establish guilt in the minds of reasonable men.

Under all these circumstances the accused should be allowed to withdraw the pleas of guilty. In *La Fave v. State*, 233 Wis. 432, 289 N.W. 670, there was an application to withdraw a guilty plea to a charge of arson under circumstances similar to those in the case at bar. The court said: "Upon the whole situation we consider that the court should have granted the motion under review and that, even though the granting of motions to withdraw a plea of guilty is discretionary, it was an abuse of discretion not to vacate the judgment imposed in the instant case and permit the withdrawal of the plea and representation by counsel."

We do not place emphasis upon any single circumstance present in this case as being sufficient in and of itself to warrant our ruling that the trial court abused its discretion in the premises. The combination of all the attendant facts and circumstances, considered in the light of the principles of law above stated, lead unmistakably to the conclusion that the pleas of guilty should be per-

mitted to be withdrawn and pleas of not guilty entered as to each count of the information. *White v. People,* 79 Colo. 261, 245 Pac. 349.

The judgment is reversed and the cause remanded for further proceedings consistent with the views herein expressed.

MR. CHIEF JUSTICE JACKSON concurs in the result.

MR. JUSTICE HOLLAND specially concurs.

MR. JUSTICE CLARK dissents.

MR. JUSTICE ALTER did not participate.

MR. JUSTICE HOLLAND specially concurring.

Since I do not dissent to the majority opinion, it is, therefore, apparent that I concur in the result but am not in accord with some statements in the opinion, and further believe that the opinion does not specifically determine some questions involved, I am submitting the following as a specially concurring opinion, which my study convinces should have been the majority opinion of the court.

I refer to plaintiff in error as defendant.

Error is assigned to the denial of defendant's motion to vacate judgment and for leave to withdraw pleas of guilty filed approximately seven or eight months after defendant had entered pleas of guilty to an information containing one felony charge and another a misdemeanor.

On the arraignment had a few days after the arrest of defendant, who appeared without counsel, the pleas were entered and some testimony taken by the court. The court advised defendant that he was entitled to apply for probation and the matter was continued several days and probation granted.

We are without a full transcript of the probation proceedings and the terms of the probation are not before

us, although the record shows same were duly filed in the case.

On this unsatisfactory record, we are concerned only with the regularity of defendant's arraignment and the sufficiency of the testimony taken by the court; also a consideration of the apparent probation order as well as the suggestion of the Attorney General, tantamount to a confession of error, in which a fine sense of duty is disclosed and highly commendable.

Here, as was said in *Kelley v. People*, 120 Colo. 1, 206 P. (2d) 337, "* * * an appraisal of the totality of facts * * *" is required.

On the night of July 4, 1949, an altercation occurred between defendant and one Edgar Heselbarth, Jr., during an attempt to separate their two automobiles which had become entangled in some manner, presumably in parking. It is not certain from the evidence as to which was the assailant. The principal witness testifying (not in a trial on the issues, but in aid of the court in determining the penalty) in substance, stated that while attempting to help disentangle the cars, he knocked the defendant down "* * * this boy Ed got into a fracas and I stopped it and we got started out lifting it again and this man came over and hit Ed again. And so I knocked the boy down and told him, 'Now, stay over away from this until we get this straightened up.' There was nothing wrong with the cars. It was all a misunderstanding all the way through. If anything happened before we arrived, I don't know. But at the time we got there there was nothing wrong. I stopped Mr. Champion from continuing the fight. And the next thing he ran up and hit this Mr. Heselbarth which caused him to break his glasses and injure his eye. I seen him run up and hit Ed, and it was too dark to see if he hit him with anything or not. I don't really think he did. I think it was just his fist. But you could hear glass shatter and you knew he was hit in the eye."

"You saw the blow struck? A. Yes, sir. Q. And that

was after the first fight had ceased and he came back; is that correct?" The answer of the witness was not responsive. Shortly thereafter the officer arrived and it seems took the keys to defendant's car. On the next day the sheriff requested defendant to come down to the hotel and, as defendant states, to get his keys. On appearing, the sheriff advised defendant that the Heselbarth boy had a bad injury to his eye and that he was taking defendant to jail. Defendant was in jail about thirty hours or more and finally released on bond.

It is very apparent, and not explicitly denied, that the deputy district attorney in talking to defendant, not as deputy district attorney, but as a lawyer, told him there was no need to employ counsel and that if he would plead guilty to both counts he would get him probation. This occurred on at least two occasions, once in person and again by telephone, and is supported by the separate affidavits of defendant and his mother filed in connection with the motion to vacate the judgment, and also further shown by the testimony of defendant and his mother at the hearing on the motion. It appears therefrom that the district attorney advised the mother along the same line that he had advised and promised defendant. The district attorney testified that he told defendant that when a defendant has a clean record he was entitled to apply for probation; and that it was up to the court, but was usually granted.

The information was filed on the 7th of July. The first count was an attempt to charge a felony in the following language: "* * * feloniously make an assault in and upon one Edgar Heselbarth, Jr., with intent to disfigure and disable the body of the said Edgar Heselbarth, to-wit: an eye of Edgar Heselbarth, Jr., * * *." The second count charged assault and battery in the following language, "* * * did unlawfully assault, beat, strike, bruise and wound the body of Edgar Heselbarth, Jr., contrary * * *."

Upon the request of the deputy district attorney, de-

fendant appeared in court on July 9 without counsel, and contrary to our mandatory statute, no copy of the information, or the list of the jurors and witnesses was furnished defendant. On being asked by the court if he was ready to plead to the information, he was then told to listen to the reading of the information and thereupon the deputy district attorney read the first court of the information and asked defendant how did he plead. Defendant replied, "I plead — guilty." The same procedure occurred on the second count of the information. The court inquired, apparently of the district attorney, "What is the penalty?" After a conference, the court then stated: "The Court desires to inform you before accepting your plea of guilty to the counts of the information, that under the first count you could be sentenced to the penitentiary for a term of not less than one nor more than fourteen years; and under the second count you could be sentenced to a term of not exceeding one year in the County jail. Now, having advised you of the consequences of your pleas of guilty, do you still desire to plead guilty to both counts?" The defendant said, "Yes, sir." The pleas of guilty were received on both counts of the information and witnesses then testified. After the testimony, the court advised defendant that he was entitled to an application for probation after investigation had been made by a probation officer. A probation officer was appointed and the matter continued for a few days.

The record contains the following: "The hearing on the application for probation was held July 14, 1949, at nine o'clock.a. m. at Central City, Colorado. Mr. Gargan called the matter up before the Court for hearing on the matter of the application for probation. Mr. Brumbaugh submitted his report of his investigation. Mr. Fitzpatrick made statements to the Court, and there was a brief discussion between Court and counsel, subsequent to which the Court entered his terms of probation, which have been previously transcribed and filed herein." Nothing

more appears in the record until the motion to vacate the judgment was filed, apparently about March or April of the following year.

Counsel for defendant assign errors, in substance, as follows: That defendant was not provided with a list of jurors or a copy of the information as required by law; that the nature of the serious charges, one of which was a felony charge, was never explained to defendant by the district attorney, nor anyone connected with the proceedings; that defendant was not advised by the court that counsel would be appointed if he desires; that the deputy district attorney acted in a dual capacity by advising and inducing defendant to plead guilty and not to obtain the services of an attorney; and that the evidence adduced at the time of arraignment was not sufficient to sustain the judgment and conviction entered by the court.

It is not disputed that the right to withdraw a plea of guilty is addressed to the sound judicial discretion of the court. It is apparent that the Attorney General, appearing for defendant in error, is not overly enthusiastic in his support of the proceedings surrounding the arraignment of defendant and his probation, but is commendably frank in saying, "that reversal or modification of the judgment in this case rests upon more substantial grounds than are here raised by defendant's assignments of error." It is evident that this position of the Attorney General is directed toward the first count of the information and he further states, "There seems to be a complete absence of evidence in the record to sustain the first count. The testimony of the witness DeMerry negatives intent in every respect." He then supports his conclusion by a narrative statement of the only evidence material to the point: "It shows a fight in which the defendant Champion, the victim Heselbarth, and the witness De-Mery were all engaged. It shows that this fight occurred in an alley back of the Teller House around midnight of July 4, 1949; that the witness knocked the defendant down, and told him 'Now, stay over away from this until

we get this straightened up.' There was nothing wrong with the cars. It was all a misunderstanding all the way through. In this state of the melee, after being admittedly knocked down by the witness DeMery, the defendant Champion got up and hit the victim Heselbarth. That it was very dark is testified to by the witness DeMery. He says 'It was too dark to see if he hit him with anything or not.' We submit that, if it was too dark for the witness, who had just knocked Champion down, to see, it was likewise too dark for Champion to see whether he was striking his assailant, DeMery, or the then bystander, Heselbarth. In order to constitute the crime of assault to commit mayhem, Champion had to make the 'assault with intent' to 'put out an eye' or voluntarily and of purpose 'put out an eye or eyes' of the victim Heselbarth. The evidence negatives this intent."

I agree with the Attorney General when he states that it is the duty of the court to examine witnesses as to the aggravation and mitigation of the offense, and it is also the duty of the court to reject a plea of guilty when it appears from the evidence that the charge made in the information is not sustained. The taking of the evidence is a statutory safeguard against a miscarriage of justice. I believe that on the fact of the only testimony adduced by the people, the trial court should have realized that it was insufficient to definitely determine who was the aggressor, and more evidence should have been requested by the court, if available, on this question. As the testimony then stood, it should have been observed by the court that it was wholly lacking in any proof of intent to commit the felony mayhem. Under this state of the record and the facts, the defendant, and regardless of his plea, stands convicted and is under punishment by probation of a crime not shown by the prosecution.

The Attorney General contends, however, that the same testimony which was given by the witness DeMery and which the Attorney General says negatives intent in every respect, does sustain defendant's plea of guilty to

the second count, that of assault and battery. With this contention I do not agree. If the evidence negatives intent to commit the felony in which the lesser offense is included, and is silent as to who was the aggressor, then it could not be determined beyond a reasonable doubt that the defendant did "unlawfully" make an assault; if in self-defense, which cannot be determined from the evidence, defendant was entitled to defend himself by reasonable means. The prosecution did not even show a prima facie case of unlawful assault. As to the contention that fatal irregularities entered into the matter of the arraignment, hearing and probation, fundamental fairness compels me to say that sufficient appears in the record to show that defendant, through ignorance of the enormity of the charge against him, was induced into not asserting and enjoying all of his legal rights. Much had been said to defendant about probation, whether it was according to defendant's testimony or that of the deputy district attorney. It is unmistakably clear from the evidence and the record that defendant was not furnished with a copy of the information, a list of the jurors, and the witnesses, prior to arraignment. In a felony case, this is mandatory. A reading of the information to the defendant at the time of arraignment does not supplant the requirements of the statute. Section 452, chapter 48, '35 C.S.A. is as follows: "Copy of indictment and list of jurors and witnesses furnished to accused.—Every person charged with murder or other felonious crime, shall be furnished, previous to his arraignment, with a copy of the indictment, and a list of the jurors and witnesses. In all other cases he or she shall at his or her own request, or at the request of his or her counsel, be furnished with a copy of the indictment, and a list of the jurors and witnesses."

The intent and purpose of this legislative enactment is obvious on its face and is logically stated in one of our early cases, *Minich v. People*, 8 Colo. 440, as follows: "It will be observed from the foregoing that the question

whether the response of 'not guilty' was given by the accused or his attorney is of no importance. And upon examination of the facts above stated it will be seen that the arraignment in this case complied fully with the requirements mentioned except in one particular, i. e., the reading of the indictment. Is this a fatal defect? It is almost superfluous for us to say that the object to be attained by this step in the proceeding is to inform the prisoner of the exact character of the crime with which he stands charged, and for which he is to be tried. At common law the material importance of this proceeding is unquestioned, for it was the only means through which the accused was given by the state a complete description of the offense charged. Section 953 of the General Statutes now, however, expressly provides that before arraignment the prisoner shall be furnished with a copy of the indictment. There can be but one object in the enactment of this provision, and that is to accomplish the very purpose for which the reading of the indictment originally took place. It needs no argument to show that in this respect the latter method is better than the former; that with a copy of the indictment in his possession, to be read and reread by himself and by his counsel, he is more thoroughly advised of the crime charged than he could possibly be in listening to the oral reading thereof by the district attorney. The latter officer might by mistake or through design omit to read or misread material matters therein contained, but when the accused has an exact copy for his own inspection, and that of his attorney, no such mistake or imposition is possible. Thus we see that not only is the statutory provision framed for the purpose of accomplishing the very object designed by the reading, but that it is a decided improvement, so far as the accused is concerned, in this regard. In Illinois, under statutes similar to ours, it is declared that 'the statutory requirement of furnishing the prisoner with a copy of the indictment is a better means of information to him of the charge than the reading of the indictment

to him.' *Fitzpatrick v. People,* 98 Ill. 259. And it is substantially held that the reading of the indictment is not essential." "Such statutes are universally held to be of a mandatory character, so that a failure to furnish a copy of the indictment or information as provided for, unless waived, amounts to reversible error." 14 Am. Jur. 912, section 206.

It has long been established and accepted as the law that this requirement of the statute is a privilege which may be waived, and we have held that when such, and similar rights are guaranteed by our Constitution, they may be waived; however, the matter of waiver in such cases must be made intelligently and with full knowledge of the right involved. Virtually all of our cases holding that such rights had been waived were on an entirely different factual basis than in the case at bar— usually where the defendant had the benefit of counsel at the time of arraignment and proceeded to trial. In the instant case we must, under the circumstances surrounding the arraignment of defendant, indulge a presumption against waiver. The basis of this theory, already accepted as the law, is forcibly expressed by the United States Supreme Court in the case of *Johnson v. Zerbst,* 304 U.S. 458, as follows: "There is insistence here that petitioner waived this constitutional right. The District Court did not so find. It has been pointed out that 'courts indulge every reasonable presumption against waiver' of fundamental constitutional rights and that we 'do not presume acquiescense in the loss of fundamental rights.' A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege. The determination of whether there has been an intelligent waiver of the right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.

\*     \*     \*

"The constitutional right of an accused to be repre-

sented by counsel invokes, of itself, the protection of a trial court, in which the accused—whose life or liberty is at stake—is without counsel. This protecting duty imposes the serious and weighty responsibility upon the trial judge of determining whether there is an intelligent and competent waiver by the accused. While an accused may waive the right to counsel, whether there is a proper waiver should be clearly determined by the trial court, and it would be fitting and appropriate for that determination to appear upon the record."

Due to the interest of the public in the life and liberty of its citizens charged with crime, such liberty cannot lawfully be taken except in the manner our legislature has wisely seen fit to prescribe. Here, our statute has made the furnishing of the copy of the indictment to the accused before arraignment essential and mandatory and this cannot be dispensed with or foreclosed by the failure of defendant to object to the procedure due to ignorance or unfamiliarity with legal procedure, and more particularly if he has been lulled into a failure to employ counsel or to plead guilty to charges, the seriousness of which is unknown and unexplained to him.

It may be said that this case can rest squarely on the question of abuse of discretion by the trial court and other questions do not need discussion. That viewpoint is good so far as it goes, but it was necessary to discuss certain points or errors alleged before it can be determined whether the discretion was abused or not and for that reason, and for future guidance, the lengthy discussion herein has been indulged.

If, as defendant and his mother said, defendant was advised by the deputy district attorney not to get counsel, and that he would be given probation, if true, such action on the part of the prosecution is to be condemned. If there was sufficient said in this connection to lull defendant into a belief that probation, something which he did not understand, would end it all, then a plea of guilty under a charge that he did not understand and made

without cautioning that he was entitled to representation by counsel so vitiates the judgment that it cannot be allowed to stand. Customary wholesome procedure suggests that in such instances it is the duty of the trial court to ascertain the facts surrounding defendant's right of protection and the same be safeguarded by counsel unless expressly rejected by the defendant. Defendant testified at the hearing of the motion to vacate the judgment, that the nature of the charges were never explained to him and that he did not know or understand the meaning of either of the charges, but that on the assurance of probation, which he did not understand, and in the belief that that was a term used in ending it all, he entered the pleas of which he now complains.

The Attorney General suggests that the matter of a reparation which entered into the probation proceedings should receive our consideration and summarizes the scanty record on that phase of the case as follows: "From this portion of the record, it is evident that the victim, Heselbarth, was demanding $600.00 in settlement of his damages, and that his demands were lifted into and made a part of the probation conditions. This being so, a failure to pay the $600.00 damages would be a violation of the probation agreement, and would thus subject the defendant to the revocation of his probation, and to then be sentenced to the penitentiary for not less than one year nor more than fourteen years."

As hereinbefore stated, the terms of the probation are not before us and not one word in the record, if such a record was made, as to what transpired at the time of the granting of the probation. A narrative thereof shows that counsel for the victim appeared at the proceedings. It is true the probation statute provides that the court shall require the defendant to make restitution or reparation for actual damages or loss caused by the offense for which the conviction was had upon such reasonable terms as the court may impose, to be paid while on probation. The defendant is entitled to probation or refusal

thereof, upon his record and other conditions, and if so entitled, probation is not to be given or denied upon any consideration involving a demand for undetermined compensatory damage.

According to the views herein expressed, the order herein must necessarily go beyond the judgment denying the motion to vacate and change the pleas of guilty and must reach into the very basis of the entire matter now before the court, that is, the pleas, the arraignment, and the probation, because it appears that the negligence of defendant, if it can be so-called, was, and is, attributable to the activities of the deputy district attorney and the oversight of the trial court.

The judgment should be reversed and the cause remanded with direction that defendant be granted leave to withdraw the pleas of guilty entered on both counts of the information and grant his request to enter a plea of not guilty to both counts and be granted a jury trial if so requested.