2004 SD 17

**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Patrick Jon THIELSEN, Defendant and Appellant.**

No. 22673.

Supreme Court of South Dakota.

Argued on Jan. 14, 2004.

Decided Feb. 4, 2004.

Lawrence E. Long, Attorney General, Frank Geaghan, Assistant Attorney General, Pierre, South Dakota, Attorneys for plaintiff and appellee.

Timothy D. Bormann, Faulkton, South Dakota, Attorney for defendant and appellant.

KONENKAMP, Justice.

[¶ 1.] Defendant was charged with the rape and murder of one woman and the rape of another, as well as aggravated assault and attempted escape from custody. On the morning his jury trial for the rape charge was to begin, he pleaded guilty under a plea agreement to murder and rape. In exchange, the State dismissed the remaining charges and dropped its request for the death penalty, whereupon defendant would receive a life sentence without possibility of parole. After the plea but before sentencing, defendant moved to withdraw his guilty plea. In the hearing to withdraw his plea, defendant alleged that he was innocent and that he had entered the plea under coercion in a state of severe emotional and physical distress. The trial court denied defendant's motion, finding that he had entered the plea knowingly and willingly and that the motion was frivolous. On appeal, defendant contends that the trial court abused its discretion because his argument that he was coerced into accepting a plea agreement amounted to a tenable reason for withdrawal of his plea. Because the record shows that defendant's grounds for wishing to withdraw his plea were insufficient, we find no abuse of discretion and affirm.

**Background**

[¶ 2.] On November 9, 2001, a Brown County Grand Jury indicted defendant, Patrick Jon Thielsen, for the felony murder of Kelly Ryan (Count I), or in the alternative, the first degree murder of Kelly Ryan (Count II). The indictment also charged defendant with the second degree rapes of Kelly Ryan (Count III) and T.L.J. (Count IV). Finally, the indictment charged defendant with aggravated assault (Count VI) against a jailer while attempting to escape from custody (Count V).

[¶ 3.] The court appointed attorneys Leon J. Vander Linden, Thomas L. Sannes, and William D. Gerdes to represent defendant. Although the trial court

denied defendant's motion requesting an attorney with greater experience in capital cases, the court authorized attorney Mark Meierhenry to act as a consultant.

[¶ 4.] On February 7, 2002, defendant was arraigned and pleaded "not guilty" to the charges contained in the Indictment. However, on November 11, 2002, the day before trial for the rape of T.L.J., the Brown County State's Attorney made a plea bargain proposal to defense counsel. That same day defendant was transported from the South Dakota State Penitentiary to a holding cell at the Brown County Jail. Defendant arrived at 5:30 p.m. His holding cell was a six-foot by nine-foot room. The cell contained no water or toilet and was lit by a single light bulb, which remained on throughout the night. The cell contained a mattress that rested directly on the floor.

[¶ 5.] The next morning, November 12, 2002, defendant was allowed to shower and dress for his scheduled court appearance. He wore a suit provided by his wife; however, he was still required to wear handcuffs and a leg brace. At 8:00 a.m., defendant met with his attorneys and his wife in a small conference room. Almost two hours later, defense counsel called in a court reporter to record the discussions on defendant's decision to accept the State's plea offer. During this discussion, defense counsel explained to defendant the content and import of the proposed plea agreement. Counsel set forth the pros and cons of accepting the agreement. Counsel spent several minutes explaining to defendant his constitutional rights and the consequences of entering into the plea agreement. At the conclusion of that meeting, defendant signed the plea agreement.

[¶ 6.] Under the agreement, defendant would plead guilty to the murder of Kelly Ryan and the rape of T.L.J. In exchange for his plea, the State would drop the remaining charges and not seek the death penalty.

[¶ 7.] At 10:40 a.m., the change of plea hearing convened. During the hearing, the judge asked defendant whether he had signed the plea agreement, whether he had read the agreement, whether he had understood the agreement, and whether he had the opportunity to discuss the agreement with his attorneys. Defendant answered affirmatively to all the questions. Additionally, the agreement was read aloud by the State. Again, the judge asked if defendant understood and agreed to the plea agreement. Defendant answered that he did. The Indictment was then read aloud by the State. Again, the judge asked if defendant understood the charges against him. Defendant responded, "Yes." The judge then informed defendant that the minimum sentence was life without the possibility of parole. Defendant acknowledged his understanding of the minimum sentence. The judge informed defendant of his constitutional rights to a speedy and public trial and the rights accompanying a trial. The judge informed defendant that as a result of his guilty plea he would effectively waive those constitutional rights. The judge specifically asked defendant whether he had enough time to speak with his attorneys about his plea, whether he had the opportunity to discuss possible defenses with his attorneys, whether his attorneys had explained his constitutional rights, and whether he was satisfied with his attorneys' advice. Finally, the judge asked defendant if his plea was voluntary and whether he had been threatened, forced, or intimidated into entering a plea. At no time did defendant indicate to the court that he was not entering the plea knowingly and freely.

[¶ 8.] Following the judge's questioning, the court found that defendant was

acting voluntarily and intelligently, was represented by able counsel, was competent to enter a plea, and understood the nature and consequences of the plea. The defendant then entered his "guilty" plea. Afterwards, the hearing was continued until 2:00 p.m. so that a factual basis stipulation could be prepared.

[¶ 9.] From 10:55 a.m. until 2:00 p.m., defendant sat in the conference room with his wife. The factual basis stipulation was prepared and defendant signed it. At 2:10 p.m., the hearing was reconvened. The judge asked defendant whether he had an opportunity to examine the factual basis stipulation, whether he read it, whether he signed it, whether he consulted with his attorneys before signing it, whether he voluntarily signed it, whether he understood it, and whether the stipulated statement was true and correct. To each question, defendant responded, "Yes."

[¶ 10.] Although defendant would later testify that he did not read the factual basis stipulation, the statement was read aloud in open court in his presence. In essence, defendant agreed that on November 1, 2001, he premeditatedly murdered Kelly Ryan in her home in Aberdeen, South Dakota, "by ligature strangulation, blunt force trauma to her abdomen causing a ruptured liver, and by stabbing her in the chest with a knife." Thereafter he fled the scene of the murder. The victim's body was found on the basement floor of her home. The stipulation also provided that on September 26, 2001, defendant drove T.L.J. and her three-month-old daughter to a remote location in Brown County, where he twice forced T.L.J. to perform oral sex on him and where he performed an act of anal sex on her.

[¶ 11.] After the reading of the factual basis stipulation, the court accepted the plea. Sentencing was set for November 21, 2002. Defendant was returned to the South Dakota State Penitentiary in Sioux Falls where, as a matter of routine precaution, he was placed on a suicide watch. He spent 48 hours confined to a "hard cell." A hard cell is an eight by ten foot room with a bare concrete floor and a raised concrete pad upon which a mattress is placed. The cell has a toilet, but is kept at a very cool temperature. Inmates confined to a hard cell wear only a gown.

[¶ 12.] During the time he spent in the "hard cell," defendant came to the realization that he had been pressured by his wife and attorneys into entering his guilty plea. Consequently, he prepared and submitted a pro se motion to withdraw his plea of guilty and a motion to dismiss his appointed counsel.

[¶ 13.] On November 21, 2002, defendant was again transferred to Brown County. At the urging of his attorneys, defendant took the stand to explain his reasons for wishing to withdraw both of his guilty pleas. In support of his plea withdrawal, defense counsel had defendant describe the conditions under which he felt coerced to plead guilty. The prosecutor was given the opportunity to cross-examine.

[¶ 14.] Defendant testified that as a result of his living conditions and in an effort to console his distraught wife, he unknowingly and unwillingly entered into the plea agreement. After personally questioning the defendant, the court denied his motion to dismiss his attorneys and to withdraw his guilty plea, finding that defendant entered into the agreement knowingly and willingly. The judge recalled that when defendant pleaded guilty, the judge did not "note any mental deficiency or any lapse of memory or any other problems or indication that the defendant was emotionally upset in any manner." Furthermore, the court found that defendant's testimony "clearly" demonstrated that he understood

the proceedings and that defendant's "motion to withdraw his plea [was] frivolous." Defendant was then sentenced in accordance with the agreement. With new counsel, defendant now appeals on the following issue: whether the circuit court abused its discretion by denying his motion, made before sentencing, to withdraw his guilty plea because he was coerced into accepting a plea agreement.

### Analysis and Decision

[¶ 15.] Defendant argues that the trial court abused its discretion in denying his request to withdraw his plea. SDCL 23A–27–11 provides:

> A motion to withdraw a plea of guilty or nolo contendere may be made only before sentence is imposed or imposition of sentence is suspended; but to correct manifest injustice a court after sentence may set aside a judgment of conviction and permit the defendant to withdraw his plea.

We have often said that when requested to allow a plea withdrawal before sentencing, a "judge's discretion in the matter should be exercised liberally in favor of withdrawal[.]" *State v. Bailey*, 1996 SD 45, ¶ 12, 546 N.W.2d 387, 391 (citing *State v. Lohnes*, 344 N.W.2d 686, 687 (S.D.1984)). Nonetheless, SDCL 23A–27–11 does not create an automatic right to withdraw a guilty plea. *State v. Engelmann*, 541 N.W.2d 96, 100 (S.D.1995) (citations omitted). While a trial court should exercise its discretion liberally, it need not grant a defendant's request where such a request is "frivolous." *Id.* (quoting *State v. Wahle*, 521 N.W.2d 134, 137 (S.D.1994)). A request is meritorious if a defendant puts forth "a tenable reason why withdrawal should be permitted, a reason based on more than a mere wish to have a trial." *Id.* (citations omitted). Defendants bear the burden of establishing that the request is based on "more than a mere desire to

have a trial." *Bailey*, 1996 SD 45, ¶ 13, 546 N.W.2d at 391.

[¶ 16.] The question here is whether the trial court abused its discretion in determining that defendant's motion was without merit. *Engelmann*, 541 N.W.2d at 100. A trial court abuses its discretion when that discretion is "exercised to an end or purpose not justified by, and clearly against, reason and evidence." *Id.* (citations omitted).

[¶ 17.] In determining whether a request to withdraw a plea is meritorious, a trial court should look to the reasons why a defendant seeks to withdraw the plea. Bailey, 1996 SD 45, ¶ 12, 546 N.W.2d at 391. In *State v. Grosh*, 387 N.W.2d 503, 506 (S.D.1986), we set forth a non-exclusive list of six potential factors to consider in deciding whether to allow a withdrawal of a guilty plea. Defendant argues:

> In the instant case [defendant] has asserted innocence, has asserted that the plea is contrary to the truth, has asserted that he misapprehended the facts, has asserted that advice from his defense counsel is incorrect and has asserted that the plea was procured by misapprehension and improper means via coercion.... This should produce a tenable reason for allowing withdrawal of the plea as no prejudice to the State is evident.

[¶ 18.] We begin our analysis by noting that defendant's understanding of our reasoning in *Grosh* is faulty. *Grosh* does not stand for the proposition that a mere assertion of one or more of those factors would suffice to meet the burden of demonstrating a tenable reason for withdrawal of a plea. We will examine each of the *Grosh* elements asserted here.

### 1. Innocence and Plea Contrary to Truth

[¶ 19.] In *Bailey,* we noted that a defendant who has pleaded guilty no longer enjoys the presumption of innocence and, on a motion to withdraw the plea, bears the burden of production and persuasion. 1996 SD 45, ¶ 13, 546 N.W.2d at 391 (citations omitted). While defendant now asserts that he is innocent of the charges against him, he presented no evidence to the trial court demonstrating such innocence. In *Engelmann,* this Court rejected as "meritless" a defendant's argument that his *Alford* plea should be freely revocable. *Engelmann,* 541 N.W.2d at 101. Here, defendant contends that because he now proclaims his innocence he should have been allowed to freely revoke his plea. However, as we stated in *Engelmann,* a plea "cannot be withdrawn as a matter of course." *Id.* Without more than a self-serving declaration of innocence, defendant's argument is without merit.

[¶ 20.] Defendant produced no evidence during his hearing that his plea was contrary to the truth. He suggests no further proof in his appellate briefs. In *Grosh,* we cited *Champion v. People,* 124 Colo. 253, 236 P.2d 127, 130 (1951), as standing for the proposition that a plea might be withdrawn where such a plea was contrary to the truth. *Grosh,* 387 N.W.2d at 506. In *Champion,* the defendant produced persuasive evidence that the State would have been unable to prove the elements of the crime charged had his case proceeded to trial. 236 P.2d at 130. Furthermore, the prosecutor in that case conceded that evidence received after defendant's guilty plea would not have sufficed to garner a conviction on the crime charged. *Id.* Here, defendant produced no such evidence or even suggested that the State would have been unable to prove the charges against him. Therefore, we can-

not say that the trial court abused its discretion in denying defendant's withdrawal on such grounds.

### 2. Misapprehension of Facts, Faulty Advice, Coercion

[¶ 21.] We deal with defendant's other assertions together because they each arise from his contention that his guilty plea was the result of overwhelming stress brought on by his poor living conditions and relentless pressure from his wife and attorneys. He argues that these circumstances placed him under a great deal of physical and emotional stress at the time he entered the plea agreement. Therefore, he believes that the plea was done "without rational thought."

[¶ 22.] In determining whether a guilty plea was offered knowingly and voluntarily, we look to the totality of the circumstances. *Lohnes,* 344 N.W.2d at 688 (citations omitted). Whether a defendant entered into a plea either unknowingly or involuntarily is judged by objective standards. *See Engelmann,* 541 N.W.2d at 101. Therefore, we must review objectively the facts surrounding defendant's plea.

[¶ 23.] Defendant points to his living conditions immediately before his plea as evidence of physical stress sufficient to contribute to his unwitting decision to accept the plea bargain. Specifically, he notes that during his transport from the South Dakota State Penitentiary to the Brown County Jail on November 11, 2002, the day before his change of plea, he was kept in full ankle shackles, and a belly chain, with handcuffs enclosed in a "black box," a device to prevent opening the handcuffs. He notes that upon his arrival at the Brown County Jail he was placed in a six by nine foot holding cell that had no water or toilet and only a light that remained lit throughout the night. While

defendant argues that such conditions were "beyond what a normal defendant would experience," he offers no evidence that other similarly situated defendants do not undergo similar conditions. Thus, he has failed to demonstrate that the physical stress he endured would cause a similarly situated person to unknowingly or unwillingly accede to a plea agreement.

[¶ 24.] That the trial court could have reasonably found that defendant's claim of excessive physical stress was meritless is fortified by the events that transpired immediately after his plea. Upon his return to the South Dakota State Penitentiary, defendant states that he was "placed on a suicide watch and confined in the 'hard cell.'" In his brief, defendant states that it was during his confinement that he "realized he was pressured into making the [guilty plea]." He also notes that the conditions in the "hard cell" were not significantly better than those found in the Brown County holding cell. Yet, it was during this 48–hour confinement that defendant admits he was able to reflect on the events leading up to his guilty plea. According to defendant's own statements, he was able to think rationally while enduring substantially similar conditions immediately after his plea. Thus, it appears that the physical conditions defendant endured did not alone hinder his ability to think rationally. We cannot say that the trial court abused its discretion in concluding that defendant's assertion of undue physical stress was insufficient.

[¶ 25.] Defendant next points to the events that transpired the day he accepted the plea agreement as showing that excessive mental stress was unduly placed upon him by his attorneys and his wife. In his testimony, he said he "vaguely" recalled the events leading up to his guilty plea. However, his testimony belies this self-serving statement.

[¶ 26.] He remembered that he was taken to the Brown County Jail on November 11, 2002 in "[f]ull ankle shackles, belly chain, handcuffs, and black box." He remembered that upon his arrival at the Brown County Jail he was strip searched. He remembered that at 8:00 a.m. on November 12, 2002, he was "allowed to shower, and dress, and come upstairs to the courtroom for the trial that was to start." He remembered he wore "a suit with a leg brace and handcuffs on." He remembered that the leg brace bothered him that morning, because it "kept falling down" and pinched him. He remembered that his attorneys, his private investigator, and his wife were present at the meeting to discuss the plea agreement. He remembered that his wife "basically immediately started crying and holding [his] hand and talking to [him] about the conversation that she had with [his] attorneys the night before." He remembered that his attorneys had "informed [his] wife that this was a death penalty case and that scared her a great deal." He remembered that his wife threatened to leave him if he was to persist in pleading not guilty. He remembered he was not thinking clearly at the time. However, he *vaguely* remembered talking with his attorneys about withdrawing his not guilty plea. He *vaguely* remembered signing documents that were placed before him. He remembered that his wife did not read the documents placed before him. He remembered, "She had actually made the comment if [he] wanted to read them more thoroughly." He remembered that he did not actually read all of the documents. He remembered not understanding the documents he was signing.

[¶ 27.] As for his appearance in court, defendant remembered that when he appeared before the judge his emotional state at the time was "[s]till very much

emotionally drained and emotionally upset." He remembered that he was thinking about his wife and children at the time he pleaded guilty. He remembered that was also the reason why he signed any documents. However, he *vaguely* remembered the State's Attorney reading the factual basis stipulation which he had signed. He remembered not understanding what the factual statement meant. And finally, he remembered that the possibility of being executed for the crime did not factor into his decision to enter his guilty plea. Defendant offers only minimal evidence to support any of his assertions. Given defendant's inconsistent and self-serving testimony, we cannot say that the trial court abused its discretion in concluding that defendant merely changed his mind on his desire to have a trial.

[¶ 28.] Defendant points to his steadfast refusal to acquiesce in a plea bargain up until the morning that the trial was to commence as evidence of the pressure that was unduly placed on him by his attorneys and his wife. He had discussed proposed plea agreements with his attorneys earlier, but he declined to proceed with them. He submits, "It was only after introducing the added pressure of his wife and her concern for him and the effect of a jury trial on the family that he altered his stance on the subject." He notes that he almost immediately decided to withdraw his guilty plea.

[¶ 29.] In *Engelmann*, we found no error in the trial court's rejection of the defendant's assertion that pressure from family members to accept a plea bargain sufficed to show a tenable reason to withdraw a plea. 541 N.W.2d at 103. Standing alone, an assertion that a plea was made as a result of pressures exerted by family members is not a sufficient cause to grant a motion to withdraw a plea.

[¶ 30.] Moreover, the record does not support defendant's assertion that his attorneys coerced him into accepting the plea agreement. First, defendant's wife was present immediately before and during defendant's signing of the plea agreement at the sole discretion of defendant. Defendant, not his attorneys, had the sole authority to either permit his wife to stay or demand that she leave. Defendant chose to allow his wife to stay. This can hardly be classified as a coercive act by defendant's attorneys. Second, that defendant's attorneys urged him to accept a plea agreement does not amount to coercion. This Court has previously stated, "[T]here comes a time when it is defense counsel's duty to advise a defendant that in the light of the facts and circumstances surrounding the offense his plight is serious indeed and that there appears to be no escape from the harsh truth that he is in fact guilty." *Stacey v. State*, 349 N.W.2d 439, 444 (S.D.1984). The transcript of defendant's private conference with his attorneys during which he signed the plea agreement reveals that defendant's attorneys were concerned about the probability that defendant would be sentenced to death should he proceed to trial on all the pending charges. The transcript also reveals that defendant's attorneys recognized that defendant had very little to gain by pleading not guilty. During the conference defendant's counsel opined:

> [O]ne of the primary reasons that we have urged that, beyond what we view as the strength of the State's case and the likelihood of a not guilty plea on both the—both the rape charges as well as the murder charge, is the fact that [defendant], *in our view, has virtually no chance of being found not guilty of either attempted escape or aggravated assault.* [Defendant] is also on parole on a prior rape. And adding up the numbers, it is in essence long enough just on those charges to put him in the

penitentiary for the rest of his life, just adding his age.... And adding the potential maximum sentences on the other charges and the reality is [defendant] would be in the penitentiary for the rest of his life or until he is an old man. So our view is that's going to happen anyway, and what this plea agreement ... avoids the possibility of capital punishment.

This logical advice to defendant was perhaps persuasive, but hardly coercive. Nonetheless, the attorneys reminded defendant of all his constitutional and statutory rights, including his right to a "speedy trial by a judge or jury of 12 citizens of Brown County, South Dakota."

[¶ 31.] Considering the totality of factors here, we cannot say that it was against reason for the trial court to rule that defendant did not provide tenable grounds to withdraw his plea. Our decision in *Engelmann* is not helpful to defendant. In *Engelmann*, we held that a defendant's diagnosed mental condition sufficed to show that he did not enter into a plea agreement knowingly and willingly. Engelmann asserted that he did not completely apprehend the details of the plea he entered. 541 N.W.2d at 99. To confirm this assertion, he offered the testimony of a psychologist and the letter of a psychiatrist who diagnosed him with "a serious mental illness." *Id.* at 99–100. In addition, at the time Engelmann entered his plea, he was taking an antidepressant and a minor tranquilizer. *Id.* For his part, the State's psychiatrist noted that Engelmann's ability to think would have been "blunted." *Id.* Engelmann's assertion, coupled with evidence, led this Court to hold that his "serious mental disorder was not a frivolous excuse." *Id.* at 103. Here, defendant has presented no evidence that his mental capacity was diminished. Instead, he relies solely on his own assertions.

[¶ 32.] In conclusion, the trial court did not abuse its discretion in finding that defendant's attempt to withdraw his plea was without sufficient support in light of the totality of the circumstances. Defendant was aware that by proceeding to trial on all the charges he risked being sentenced to death. He was aware that by signing the plea agreement he would receive a sentence of life without the possibility of parole. He signed the plea agreement. He acknowledged his understanding of and acquiescence in a guilty plea on at least forty-five separate occasions on the day he pleaded guilty. He signed a factual basis statement that was read to him. In short, defendant has failed to show that any of the factors to which he points objectively lead to the conclusion that he was entitled to withdraw his guilty pleas to rape and murder.

[¶ 33.] Affirmed.

[¶ 34.] GILBERTSON, Chief Justice, and SABERS and ZINTER, Justices, and GORS, Circuit Judge, concur.

[¶ 35.] GORS, Circuit Judge, sitting for MEIERHENRY, Justice, disqualified.