STATE of South Dakota, Plaintiff
and Appellee,

v.

Stephen G. GROSH, Defendant
and Appellant.

No. 14830.

Supreme Court of South Dakota.

Considered on Briefs Jan. 15, 1986.

Decided May 7, 1986.

Robert Mayer, Asst. Atty. Gen., Pierre, for plaintiff and appellee; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

George A. Bangs of Bangs, McCullen, Butler, Foye & Simmons, Rapid City, and Catherine G. Ortner of Ortner & Ortner, Hot Springs, for defendant and appellant.

HENDERSON, Justice.

ACTION

Stephen G. Grosh (Mr. Grosh) appeals from a Judgment of Conviction entered

upon a plea of guilty to a charge of distribution of cocaine. SDCL 22–42–2 and SDCL 34–20B–16. We affirm.

## FACTS

In October 1983, Mr. Grosh was charged with distribution of cocaine and marijuana. At the same time, Linda D. Grosh (Linda), Mr. Grosh's wife, was also charged with distribution of cocaine. Events leading to the respective charges occurred on different dates. The Groshs retained Attorney Catherine G. Ortner and Attorney Ortner detected no conflict of interest in the dual representation. Attorney Ortner advised the Groshs of their right to separate counsel and of the circumstances which could lead to a conflict of interests.

In August 1984, through the efforts of Attorney Ortner, the charges against the Groshs were dismissed. Shortly thereafter, the State refiled identical charges against the Groshs. Preliminary hearings and arraignments were held. At an October 19, 1984, motion hearing, the trial court scheduled Mr. Grosh's trial for November 28 and 29, 1984, and Linda's trial for November 30, 1984. At this motion hearing, the trial court expressed its concern about a conflict of interests occurring if one of the Groshs took the stand and implicated the other. Acknowledging that it did not know what the defense testimony and evidence would entail, the trial court strongly advised the Groshs about potential conflicts of interests and suggested it might be necessary for one of them to obtain an attorney other than Attorney Ortner. Attorney Ortner agreed that it would be a good idea for the Groshs to speak with another attorney and get a fresh viewpoint. The trial court further stated:

> I can't make either of you represent yourself individually and I can't take your lawyer away from you, nor will I. You are advised though, that you each should consider the possibility that [Attorney] Ortner's representation may create a conflict of interest especially when we're talking about going to trial, and one or both of you taking the stand.

Thereafter, the Groshs waived any potential conflict of interest and Attorney Ortner proceeded to prepare for trial. This waiver was made to Attorney Ortner and was not made in the presence of the trial court. There is no written waiver within the settled record. On November 16, 1984, a telephone conference was held between the trial court, Attorney Ortner, and the State's Attorney. During this conference, the trial court again expressed its concern about potential conflict of interests whereupon, sua sponte, it appointed Attorney Todd Hauge to assist and advise Linda should a conflict arise. Attorney Hauge was to sit through the Groshs' trials and insure that Linda's interests were being protected.

After being advised of the trial court's actions, the Groshs resolved (1) to select their own additional attorney, and (2) that new counsel would represent Mr. Grosh while Attorney Ortner would continue to represent Linda. On November 19, 1984, another telephone conference between trial court, Attorney Ortner, and the State's Attorney occurred. During this conference, the trial court ordered that any newly retained counsel was to represent Linda and not Mr. Grosh. At this time, the trial court also denied a defense request for a continuance and ordered Attorney Ortner to instruct Linda to visit Attorney Hauge.

Plea negotiations were thereafter instituted and a plea bargain was struck. Plea bargains are authorized by the State Legislature. SDCL 23A–7–8. It appears the Groshs were concerned with Mr. Grosh retaining his job with the railroad and that one of them remain free of any felony convictions so a Nebraska liquor license would not be jeopardized. The substance of the plea bargain was (1) Mr. Grosh would plead guilty to the distribution of cocaine charge; (2) the charge against Linda and the remaining charge against Mr. Grosh would be dropped; (3) the State would not object to a request for a suspended imposition of sentence, but would, in fact, concur in such a request; and (4)

such a request would not be binding upon the trial court. On November 30, 1984, after the trial court discussed (a) Mr. Grosh's constitutional and statutory rights, (b) the plea agreement, (c) the Groshs' employment circumstances, and (d) that the requested suspended imposition of sentence was not binding upon the trial court and a ten-year penitentiary sentence was possible, Mr. Grosh pleaded guilty to the cocaine distribution charge in accordance with the plea agreement. A presentence report was then ordered by the trial court.

On December 21, 1984, Mr. Grosh moved to withdraw his guilty plea. This Motion to Withdraw was bottomed on the following factual assertions:

> Initially when [Mr. Grosh] weighed the risks of trial on the information against the ramifications of a ... plea, the balance weighed in favor of a decision to enter a ... plea to [the cocaine distribution charge] on condition that the state dismiss the charge against defendant's wife Linda. As the Court knows, the primary considerations influencing the initial decision were the ability of the two defendants to obtain a Nebraska liquor license for their restaurant and lounge in Bridgeport, Nebraska, and to hold on to defendant's job as a conductor for Burlington Northern Railroad, for the purpose of subsidizing the private business enterprise until it becomes more established.

> However, from recent information it appears that defendant will lose his conductor job if a judgment of conviction is entered.

A hearing via telephone was held on the Motion to Withdraw on December 27, 1984. After hearing the positions of the respective parties, the trial court denied the motion. The reasons asserted for the denial were: (1) prejudice to the court; (2) inability to adequately and speedily try Mr. Grosh; (3) prior acceptance of a free and voluntary guilty plea; (4) absence of a substantial reason for withdrawal; (5) delay and manipulation of the court system; (6) entrapment defense not significantly meri-

torious; (7) completion of extensive presentence investigation; and (8) sufficient factual basis for the plea.

An Amended Motion to Withdraw Plea was presented to the trial court on December 28, the day of Mr. Grosh's sentencing. The substance of this pleading was that Mr. Grosh was "stampeded" into the plea agreement by the conflict of interests/appointment of additional counsel events which transpired just prior to the date set for trial. This pleading was also based on an allegation that the presentence report contained an attachment filled with inaccurate allegations of criminal activity on the part of Mr. Grosh. This Amended Motion was denied. Thereupon, the trial court proceeded to sentence Mr. Grosh.

An attachment to the presentence report by Fall River County Sheriff Leo Bray alleged numerous instances of illegal activity by Mr. Grosh. Further, the attachment recommended that Mr. Grosh be incarcerated in the penitentiary and pay a fine. These allegations were based on an unnamed confidential informer. Attorney Ortner objected to the inclusion of this material and suggested cross-examination of the informant. The trial court sentenced Mr. Grosh to five years' imprisonment. It then acknowledged (1) for the record and (2) for purposes of appeal that it had considered the recommendations and observations of Sheriff Bray and had partially based its judgment thereon.

Three issues are presented, and we address them seriatim.

## DECISION

### I.

DID THE TRIAL COURT ABUSE ITS DISCRETION BY DENYING MR. GROSH'S PRESENTENCE MOTIONS TO WITHDRAW HIS GUILTY PLEA? WE HOLD IT DID NOT.

■ The withdrawal of a guilty plea before the imposition of sentence is within the sound discretion of the trial court. SDCL 23A–27–11. There is no absolute right to withdraw a guilty plea, *State v.*

*Losieau,* 266 N.W.2d 259, 262 (S.D.1978), but the trial court's "discretion in the matter should be exercised liberally in favor of withdrawal, unless it appears that the State has detrimentally relied upon the plea and the prosecution of the defendant has been thereby prejudiced." *State v. Lohnes,* 344 N.W.2d 686, 687 (S.D.1984). When deciding whether to allow a criminal defendant to withdraw his plea, the trial court must look at the reasons why the plea is sought to be withdrawn, *Losieau,* 266 N.W.2d at 262, and if the request to withdraw is obviously frivolous, the trial court need not grant it. *People v. Hale,* 99 Mich.App. 177, 180, 297 N.W.2d 609, 610 (1980).

■ Mr. Grosh contends the trial court abused its discretion in denying his motions to withdraw because there is no showing of detrimental reliance/prejudice on the part of the State. Even conceding, however, the absence of detrimental reliance or prejudice, we cannot conclude that the trial court abused its discretion. The reasons why a guilty plea is sought to be withdrawn must be examined, *Losieau,* 266 N.W.2d at 262; the defendant must state a persuasive reason why withdrawal should be permitted, *People v. Cubitt,* 25 Mich. App. 643, 644, 181 N.W.2d 573, 574 (1970); and the reason must show more than the mere desire to have a trial. *Dudrey v. State,* 74 Wis.2d 480, 486, 247 N.W.2d 105, 108 (1976). Here, the crux of Mr. Grosh's Motion to Withdraw was that he would probably lose his job with the railroad and that he had reconsidered the risks of going to trial in light of employment considerations. Mr. Grosh, however, did not assert his innocence, *United States v. Barker,* 514 F.2d 208, 220 (D.C.Cir.1975), *cert. denied,* 421 U.S. 1013, 95 S.Ct. 2420, 44 L.Ed.2d 682 (1975). He did not assert that the plea was contrary to the truth, *Champion v. People,* 124 Colo. 253, 259, 236 P.2d 127, 130 (1951). He did not assert a misapprehension of the facts, *State v. Walters,* 48 S.D. 322, 325, 204 N.W. 171, 172 (1925). He did not assert receipt of incorrect advice, *Kienlen v. United States,* 379 F.2d 20, 28 (10th Cir. 1967). He did not assert a misunderstand-

ing as to the plea's effect or mistake or misconception of the nature of the charges, *State v. McBane,* 128 Mont. 369, 371, 275 P.2d 218, 219 (1954). And he did not assert that the plea was procured by fraud, mistake, misapprehension, fear, or improper means, *State v. Williams,* 361 S.W.2d 772, 774 (Mo.1962); *State v. Cunningham,* 185 Neb. 488, 489, 176 N.W.2d 732, 733 (1970). Instead, Mr. Grosh apparently just changed his mind based on extra-judicial employment factors. This is not a persuasive reason to set aside the guilty plea. Therefore, we cannot conclude that the trial court abused its discretion. We are satisfied that Mr. Grosh's guilty plea was voluntarily and intelligently made with adequate advice of counsel and nothing in the record herein impugns the accuracy and reliability of Mr. Grosh's admission in open court that he was guilty of distributing cocaine.

Alternatively, Mr. Grosh contends the trial court's denial of his withdrawal motion was an abuse of discretion because the trial court accepted a portion of the plea bargain, i.e., the charge concessions, but refused the sentence diminishment without permitting him to withdraw his plea based thereon. In *State v. Rich,* 305 N.W.2d 390, 392–93 (S.D.1981), we held, in the context of that case, that where the trial court repeatedly advised the defendant of his rights and of the fact that it was not bound by the agreement, the trial court's nonacceptance of the recommended maximum sentence did not constitute a rejection of the defendant's plea bargain with the State which would afford him a right to withdraw his plea under *United States v. Sarubbi,* 416 F.Supp. 633 (D.N.J.1976). This is because an SDCL 23A–7–8(2) agreement to recommend or not oppose a requested sentence is understood by the parties not to bind the trial court to that recommendation or request and nonacceptance thereof is not a rejection of the plea agreement. *Rich,* 305 N.W.2d at 392–93. Sentencing is the function of the trial court.

■ In the present case, the parties agreed that Mr. Grosh would request sus-

pended imposition of sentence and the State would not oppose the request. Repeatedly, the trial court advised Mr. Grosh that the request was not binding on the court and the maximum statutory punishment could be imposed. We hold the trial court's nonacceptance of the requested sentence did not constitute a rejection of the plea bargain. Thus, Mr. Grosh did not have a right to withdraw his guilty plea. Mr. Grosh's Motion to Withdraw was properly denied.

## II.

WAS MR. GROSH DENIED HIS CONSTITUTIONAL RIGHTS TO COUNSEL OF CHOICE AND A JURY TRIAL? BY VALIDLY PLEADING GUILTY, MR. GROSH WAIVED ALL NONJURISDICTIONAL DEFECTS IN THE PRIOR PROCEEDINGS.

The Sixth Amendment to the United States Constitution and South Dakota Constitution Article VI, § 7, guarantee the criminally accused the right to the assistance of counsel and the right to defend by counsel. We have interpreted our constitutional provision as meaning the accused has a constitutional right to defend by counsel of his own choice. *See State v. Goode*, 84 S.D. 369, 372, 171 N.W.2d 733, 734 (1969); *State v. Buffalo Chief*, 83 S.D. 131, 138, 155 N.W.2d 914, 918 (1968); and *State v. Erickson*, 83 S.D. 79, 81, 155 N.W.2d 313, 314 (1967). Right to trial by jury is guaranteed by the Sixth Amendment to the United States Constitution and South Dakota Constitution Article VI, § 6.

■ On appeal, Mr. Grosh contends the events which transpired before his guilty plea violated his constitutional rights to counsel of choice and trial by jury. Although we do not exalt the trial court's activities herein, because it is not the responsibility of the trial court "to exercise any control over the selection of counsel by an accused[,]" *Erickson*, 83 S.D. at 81, 155 N.W.2d at 314, we conclude that by pleading guilty, Mr. Grosh waived all nonjurisdictional defects in the proceedings prior to acceptance of his guilty plea. We continue

to admonish trial courts to permit a free and open selection of counsel by the accused.

This Court has consistently held that a plea of guilty, if voluntarily and understandably made, waives all nonjurisdictional defects in the prior proceedings. *See State v. Janssen*, 371 N.W.2d 353, 356 (S.D. 1985); *State v. Morrison*, 337 N.W.2d 825, 826 (S.D.1983); *State v. Culton*, 273 N.W.2d 200, 202 (S.D.1979); *Losieau*, 266 N.W.2d at 261-62; *State v. Jordan*, 261 N.W.2d 126, 126 (S.D.1978); *State v. Thundershield*, 90 S.D. 391, 395, 242 N.W.2d 159, 163 (1976); and *State ex rel. Condon v. Erickson*, 85 S.D. 302, 307, 182 N.W.2d 304, 306-07 (1970). Rationale being that

> a guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea....

*Tollett v. Henderson*, 411 U.S. 258, 267, 93 S.Ct. 1602, 1608, 36 L.Ed.2d 235, 243 (1973).

■ Nonjurisdictional defects are defects—which would not prevent a trial from taking place—because of a constitutional infirmity, *Culton*, 273 N.W.2d at 202; and when a criminal defendant pleads guilty, he waives alleged violations of his constitutional right to counsel and right to effective assistance of counsel, which transpired prior to his plea of guilty. *Korman v. State*, 262 N.W.2d 161, 161 (Minn.1977); *People v. Johnson*, 125 Mich.App. 76, 79-80, 336 N.W.2d 7, 7-8 (1983). Thus, herein, when Mr. Grosh voluntarily and intelligently pleaded guilty, he waived the nonjurisdictional defect he asserts on appeal, because such defect, unlike double jeopardy and the right to a speedy trial, does not prevent a trial from taking place. *See Menna v. New York*, 423 U.S. 61, 96 S.Ct.

241, 46 L.Ed.2d 195 (1975); and *People v. Davis*, 123 Mich.App. 553, 332 N.W.2d 606 (1983). Had Mr. Grosh not waived the alleged defect concerning the right to defend by counsel of choice, the remedy would be to reverse and remand for a new trial and an outright reversal of the conviction would not be the remedy.

Additionally, we note the record reveals that Mr. Grosh's guilty plea was voluntarily and intelligently entered and upon the advice of counsel. Attorney Ortner, Mr. Grosh's counsel for over one year, advised Mr. Grosh as he was unable, apparently, to procure different counsel. We find nothing in the record to impugn the integrity or propriety of Mr. Grosh's plea. We conclude the plea waived the defects now advocated.

### III.

WAS MR. GROSH DENIED DUE PROCESS WHEN THE TRIAL COURT PARTIALLY BASED ITS SENTENCING JUDGMENT ON THE ATTACHMENT TO THE PRESENTENCE REPORT? WE HOLD HE WAS NOT.

Mr. Grosh contends that Sheriff Bray's attachment to the presentence report contained inaccurate and erroneous hearsay information. Therefore, it is urged that to base his sentence thereon, is a denial of due process.[1] Mr. Grosh, however, fails to specifically elaborate or recite the alleged errors, and the settled record herein does not reveal the substance and extent of the errors, if any.[2] Although we caution our trial courts about placing heavy reliance on attachments such as the one here in question; and further caution that there "may be instances in which a defendant's protestations of innocence of related incriminatory circumstances following his plea of guilty to the principal charge may be worthy of further exploration and proof," *State v. Carsten*, 264 N.W.2d 707, 710

(S.D.1978), we are unable to conclude that a due process violation exists in this case.

Within constitutional and statutory limits, the trial courts of this state exercise broad discretion when deciding the extent and kind of punishment to be imposed. To assist in the exercise of this discretion, the presentence report, inter alia, is to contain such information about the defendant's "characteristics, his financial condition and the circumstances affecting his behavior as may be helpful in imposing sentence or in granting probation or in the correctional treatment of the defendant, and such other information as may be required by the court." SDCL 23A–27–6. SDCL ch. 23A–27, however, does not preclude the trial court from obtaining information by means other than provided in that chapter. *State v. Conger*, 268 N.W.2d 800, 802 (S.D.1978). On the contrary:

[T]he sentencing judge may exercise wide discretion with respect to the type of information used as well as its source. He should have full access to the fullest information possible concerning the defendant's life and characteristics. *Williams v. People of State of New York* [337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949)] *supra; United States v. Tucker*, 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972); *State v. Rose*, 183 Neb. 809, 164 N.W.2d 646 (1969); *People v. McFarlin*, 389 Mich. 557, 208 N.W.2d 504 (1973); *State v. Delano*, Iowa, 161 N.W.2d 66 (1968); *State v. Myers*, 241 Iowa 670, 42 N.W.2d 79 (1950). Information which should be available to the court includes general moral character, mentality, habits, social environment, tendencies, age, aversion or inclination to commit crime, life, family, occupation, and previous criminal record. *People v. Adkins*, 41 Ill.2d 297, 242 N.E.2d 258 (1968); *People v. Metcalf*, Mich.App., [65 Mich.App. 37] 236 N.W.2d 573 (1975);

---

1. Sheriff Bray's attachment to the presentence report was solicited by and through the trial court's Court Services Officer and not by the State's Attorney.

2. We address the alleged error now before us because it occurred *after* Mr. Grosh pleaded guilty. *State v. Morrison*, 337 N.W.2d 825, 826 (S.D.1983).

*State v. Cupples*, 260 Iowa 1192, 152 N.W.2d 277 (1967).

*Conger*, 268 N.W.2d at 801–02. "A sentencing judge's access to information should be almost completely unfettered in order that he may 'acquire a thorough acquaintance with the character and history of the man before [him].' *United States v. Doyle*, 348 F.2d 715, 721 (2d Cir.), *cert. denied*, 382 U.S. 843, 86 S.Ct. 89, 15 L.Ed.2d 84 (1965)." *United States v. Schipani*, 435 F.2d 26, 27 (2nd Cir.1970) (brackets in original), *cert. denied*, 401 U.S. 983, 91 S.Ct. 1198, 28 L.Ed.2d 334 (1971). Nothing in SDCL ch. 23A–27 requires that "opinions of the court services worker must be excluded from the presentence report or that the report must contain only cold, hard facts." *Carsten*, 264 N.W.2d at 711. The presentence report

"may rest on hearsay and contain information bearing no relation whatever to the crime with which the defendant is charged." *Gregg v. United States*, 394 U.S. 489, 492, 89 S.Ct. 1134, 1136, 22 L.Ed.2d 442, 446. *See also Davis v. United States*, 5 Cir., 376 F.2d 535; *Farrow v. United States*, S.D.Cal., 373 F.Supp. 113; *State v. Bevins*, 198 Neb. 761, 255 N.W.2d 284.

*Carsten*, 264 N.W.2d at 711.

Due process does not require that the scope of information reviewed by the sentencing judge be controlled by the rules of evidence, and consideration of out-of-court information and hearsay evidence is not precluded. *Williams v. New York*, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949); *United States v. Schipani*, 435 F.2d 26 (2nd Cir.1970), *cert. denied*, 401 U.S. 983, 91 S.Ct. 1198, 28 L.Ed.2d 334 (1971).

*State v. Ellefson*, 287 N.W.2d 493, 496 (S.D.1980). However, we do not condone false information or prevarication. And if it becomes apparent to the trial court that unfounded charges are advanced in a Court Officer's report or an attachment thereto by any party or agency, the matter should be explored for the truth. Out-of-court information and hearsay evidence might

not be precluded, but they must be consistent with the truth.

Mr. Grosh's case is not a case where the sentence is "based upon materially inaccurate information concerning his prior criminal record." *Crowe v. State*, 86 S.D. 264, 285, 194 N.W.2d 234, 246 (1972). And we conclude that no due process violation exists.

Affirmed.

FOSHEIM, C.J., MORGAN and WUEST, JJ., and HERTZ, Circuit Judge, Acting as Supreme Court Justice, concur.

SABERS, J., not having been a member of the Court at the time this action was submitted to the Court, did not participate.