**UNITED STATES of America, Plaintiff,**

v.

**Erskine SMITH, II, Defendant.**

**CR No. 92–146.**

United States District Court,
W.D. Pennsylvania.

April 8, 1993.

**124**

Carolyn J. Bloch, Asst. U.S. Atty., Pittsburgh, PA, for plaintiff.

Joel B. Johnson, Pittsburgh, PA, for defendant.

## MEMORANDUM OPINION

COHILL, District Judge.

Presently before the Court is the *pro se* motion of defendant Erskine Smith, II, to withdraw his guilty plea, filed on February 25, 1993. On March 30, 1993 we held a hearing on the matter and for the following reasons, we will deny the motion.

### I. Background

The grand jury charged defendant Erskine Smith, II with: (1) two counts of unlawful possession with intent to distribute in excess of 50 grams of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(iii); (2) two counts of unlawful possession with intent to distribute less than five grams of cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C); (3) two counts of unlawful possession with intent to distribute less than 500 grams of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C); (4) one count of unlawfully conspiring to distribute and possessing with intent to distribute less than five grams of cocaine base in violation of 21 U.S.C. § 846; and (5) one count of unlawful distribution and possession with intent to distribute less than five grams of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C).

Six of the eight counts in the indictment arose from charges which originally arose in state court and were nol prossed. Counts seven and eight arose after a Drug Enforcement Administration (DEA) investigation of Mr. Smith, involving a confidential informant, Warren "Butch" Parrott. Parrott wore a body recorder and transmitter while he purchased crack cocaine from Mr. Smith in one of many cars owned by Mr. Smith. Co-defendant Michael Vaughn was in the car at the time of the purchase.

On November 13, 1992, weeks prior to Mr. Smith's guilty plea, the government sent a letter to Mr. Smith's attorney, in which the government estimated that with a three-level decrease in the base offense due to acceptance of responsibility credit, the defendant would be subject to a sentence ranging from 108 to 135 months imprisonment. Def.Ex. 1 at 1. The letter further advises, "the above calculations are arrived at by assuming Mr. Smith has a Criminal History Category of I (0–1 prior convictions)." Def.Ex. 1 at 2.

Prior to the guilty plea, and at the request of Mr. Smith's attorney, the Assistant United States Attorney and the investigating DEA agent twice visited Mr. Smith at the Butler County jail, where he was being detained. Mr. Smith testified that he does not remember requesting either meeting, and the DEA agent did not recall if Mr. Smith requested to speak with the government about entering a plea of guilty. The agent believes that he was contacted by Mr. Smith's attorney, Bruce Carsia.

DEA Agent Rotter testified that on the first visit to Butler County jail, the Assistant United States Attorney outlined the case, told Mr. Smith what evidence the government had against him, and told Mr. Smith and attorney Carsia to contact them if he wanted to cooperate. At some point there was a three-way phone call between Mr. Smith, Mr. Carsia, and agent Rotter, during which agent Rotter explained that the government would want Mr. Smith's full cooperation in testifying against Michael Vaughn as a condition to the government requesting a reduction of Mr. Smith's sentence. At the

second meeting at the Butler County jail, Mr. Smith indicated that he was willing to cooperate even though Michael Vaughn is a friend of his; he said that he understood that the government could not make him any promises regarding his eventual sentencing.

It was not until New Year's Eve, three days before the January 4, 1993 trial date, that Mr. Smith decided to plead guilty.

On January 4, 1993, the date set for trial, Mr. Smith pleaded guilty to all eight counts in the indictment. We conducted a lengthy colloquy at the time of Mr. Smith's guilty plea. During the colloquy, Mr. Smith stated to the court that he understood all the terms of the plea agreement (Tr. 20) and what his possible statutory sentence could be (Tr. 14–16). He now claims that he was "told to say that." He also testified that he had discussed pleading guilty with his parents (T. at 23) but denied this at the instant hearing. His parents also testified at the instant hearing that he had not discussed it with them.

The defendant and the government entered into a plea agreement, which we admitted into the record. Def.Ex. 2. The plea agreement states that Mr. Smith "will assist law enforcement agencies in investigating violations of federal narcotics laws, during the period from 1990 to the present, allegedly committed by Michael C. Vaughn and others." Def.Ex. 2 at ¶ A2. Mr. Smith further agreed to "provide all information within his knowledge concerning the investigation. All information will be full, complete, accurate and truthful." Def.Ex. 2 at ¶ A4.

The agreement further states that "[i]n consideration of and *entirely contingent upon the foregoing*" the government would *recommend a reduction in the offense level by three levels for acceptance of responsibility.* Def.Ex. 2 at ¶ B3 (emphasis added). If Mr. Smith is deemed not to have cooperated with the government, "the obligations of the United States Attorney under this agreement are terminated.... Any plea of guilty previously entered will stand, however, and Erskine Smith, II, will not have the right to withdraw the plea of guilty by virtue of his breach of this agreement." Def.Ex. 2 at ¶ C6.

At the time of the guilty plea, Smith was represented by Bruce Carsia, Esq., who withdrew from this case on March 12, 1993 after Smith alleged ineffective assistance of counsel. He is now represented by Joel Johnston, Esq.

Immediately after Mr. Smith's guilty plea, DEA agent Rotter attempted to elicit information from Mr. Smith regarding various alleged drug transactions between Mr. Smith and others, including co-defendant Michael Vaughn. Mr. Smith refused to cooperate with the government, claiming that Michael Vaughn was innocent of the charges.

Michael Vaughn elected to go to trial on the same day as Mr. Smith's guilty plea and was subsequently convicted at Counts Seven and Eight of the indictment, the only two counts in which he was named. Had Mr. Smith not pled guilty, he and Mr. Vaughn would have been tried together, beginning that day. Mr. Smith is currently detained at the Federal Correctional Institution in Morgantown, West Virginia. His sentence is pending.

The probation department has prepared a presentence investigation report, which indicates that under the Sentencing Guidelines, Mr. Smith is a career criminal due to two prior felony convictions involving violent crimes. The total offense level was determined to be 35 and the criminal history category VI, which places the applicable guideline range from 292 to 365 months.

This calculation, Mr. Smith alleges, is not what he had bargained for. After reviewing the presentence report, Smith filed the motion to withdraw his plea. Smith alleges that he did not understand the plea agreement. He claims that he only had a short time to review it on the morning of the trial date, thus he was not able to make a rational decision. He claims that he had been told that his cooperation in the trial of Michael Vaughn could reduce his sentence. Smith admits that he never testified as promised against co-defendant Michael Vaughn because he asserts that Michael Vaughn is an innocent person, which would render Mr. Smith a perjurer. He also claims that his attorney and the assistant U.S. Attorney intimidated him by overemphasizing the large

sentence that would be imposed if he did not plead guilty. He also claims that he was not aware that he could be sentenced as a career offender. Finally, he claims he is not guilty.

At the hearing regarding the motion to withdraw his plea, Smith testified that he plead guilty because his attorney had told him that he had no chance of being found not guilty, and because his attorney had not prepared for the trial. He stated that his attorney did not adequately investigate the case. He claims that this coercion forced him into saying that he was guilty, when in reality, he is not.

On cross examination, Mr. Smith admitted that he had discussed the terms of the plea agreement with the Assistant United States Attorney during the final visit at the Butler County jail, and that he knew that he would not see the plea letter until the day of trial.

## II. Discussion

Fed.R.Crim.P. 32(d) provides that "if a motion for withdrawal of a plea of guilty or nolo contendere is made before sentence is imposed, the court may permit withdrawal of the plea upon showing by the defendant of any fair and just reason." A defendant who has pled guilty no longer enjoys the presumption of innocence and, on motion to withdraw plea, bears the burden of production and persuasion. *United States v. Allen,* 668 F.Supp. 969 (W.D.Pa.1987), *aff'd* 845 F.2d 1016 (3d Cir.1988).

When a defendant enters a plea of guilty, he or she waves the constitutional right to a trial by jury, the right to confront accusers, and the right against self-incrimination. *Heiser v. Ryan,* 951 F.2d 559, 561 (3d Cir.1991). A guilty plea should be treated very seriously, and must be a "knowing, intelligent act," that is "the voluntary expression of [the defendant's] own choice." *Brady v. United States,* 397 U.S. 742, 748, 90 S.Ct. 1463, 1469, 25 L.Ed.2d 747 (1970). Any threats will strip the guilty plea of the voluntariness requirement, thus voiding the plea. *Machibroda v. United States,* 368 U.S. 487, 493, 82 S.Ct. 510, 513, 7 L.Ed.2d 473 (1962). We must disregard any variance from the procedures required by Rule 11 which do not

affect substantial rights. Fed.R.Crim.P. 11(h).

The United States Court of Appeals for the Third Circuit applies three factors to be considered in evaluating the motion to withdraw a guilty plea:

1. whether the defendant asserts his innocence;

2. whether the government would be prejudiced by his withdrawal; and

3. the strength of the defendant's reasons to withdraw the plea.

*United States v. Huff,* 873 F.2d 709, 712 (3d Cir.1989).

Mr. Smith alleges that he is innocent. His parents testified at the hearing on the instant motion. His father stated that his son had always maintained his innocence, and that he had always told his son to let the case go to a jury trial. He was therefore surprised that his son plead guilty. He also testified that many people would have testified at trial on behalf of his son, but that these people were afraid to do so because of police threats. Mr. Smith's father, a former security officer, also testified that he believed that the tape recording of the alleged drug transaction between the informer and his son was "doctored."

Defendant's mother, Yvonne Smith, testified that she, too, recalled that her son had always claimed to be innocent of the charges in the indictment. She was surprised by her son's guilty plea. She also testified that when the DEA agents came to the Smith's residence to obtain evidence, a bag seized from her son's bedroom did not contain illegal substances, as believed by the government, but rather contained some cleaning solution that her son had given to her and that a scale seized in the home was really used to weigh food.

To unsettle a valid guilty plea under Federal Criminal Rule 32(d), defendant's assertion of innocence must be credible. *United States v. Allen,* 668 F.Supp. 969 (W.D.Pa. 1987), *aff'd* 845 F.2d 1015 (3d Cir.1987). Even credible, heartfelt assertions of innocence may not constitute "fair and just reason" for withdrawal of guilty plea. *Id.*

Moreover, as stated above, the defendant bears the burden of persuasion:

> A simple shift in defense tactics, a change of mind, or the fear of punishment are not adequate reasons to force the government to incur the expense, difficulty and risk of trying a defendant, who has already acknowledged his guilt before the court. We do not take lightly the right which every defendant possesses to have the protective cloak of innocence removed by trial. Nonetheless, the situation is different when the cloak has been shed voluntarily and knowingly before the court. The defendant must then not only reassert innocence, but give sufficient reasons to explain why contradictory positions were taken before the district court and why permission should be given to withdraw the guilty plea and reclaim the right to trial.

*United States v. Jones,* 979 F.2d 317, 318 (3d Cir.1992).

We do not find the testimony of Mr. Smith or his parents credible, given the self-serving nature of the testimony, their appearance and demeanor in court, and the amount of evidence the government had accumulated against Mr. Smith in preparation for his prosecution. Having presided over the trial of Michael Vaughn and having heard much of the evidence which would have been likewise relevant to the case against Erskine Smith, we have no doubt that the final verdict would have been the same for Smith as it was for Vaughn—guilty on all counts.

We believe that Mr. Smith's attorney would have realized the losing odds that his client faced. He also would have realized that any testimony of Mr. Smith's friends or relatives regarding the substance seized at the Smith house and the tape recording of the illegal drug purchase would have been issues of fact for the jury. A lawyer knowing this would still have to evaluate whether a jury is apt to believe such testimony in gauging his client's chances for a not guilty verdict.

Mr. Smith also claims that he did not understand the plea agreement and that its terms were misleading regarding the Sentencing Guideline's range of imprisonment. Mr. Smith alleges that the letter written to

his attorney in November, Def.Ex. 1, clearly states that he was facing a range from 108 to 135 months. But he admits that he stated during the colloquy that he understood that, by statute, he could be imprisoned anywhere from ten years to life in prison. Mr. Smith explained that he did not really understand the possible sentencing range at the time of his plea, but that he was told by his attorney to say he did understand. At the hearing on the change of plea, we found him competent to plead. Tr. 5.

■ Generally, plea agreements are contractual in nature and must be analyzed under contract law standards. *United States v. Moschahlaidis,* 868 F.2d 1357, 1361 (3d Cir. 1989). We must ensure that the plea bargaining process is "attended by safeguards to insure the defendant [receives] what is reasonably due in the circumstances." *Id.*

■ We do not believe that Mr. Smith's protest that the potential sentence was more severe than he thought it would be sufficiently meets the standard applied to the granting of a motion to withdraw a plea. "An unexpected computation will generally not serve to breach a bargain, particularly when the plea agreement acknowledged that possibility." *United States v. Torres,* 926 F.2d 321, 327 (3d Cir.1991); *See also United States v. Lambey,* 949 F.2d 133 (4th Cir.1991). In *Lambey* the court denied a motion to withdraw even though the defendant asserted that he believed that he would receive shorter sentence than that outlined by the court due to discussions with his attorney prior to the plea. At the plea hearing defendant Lambey had stated that he was aware that no sentence had been determined and that he could be sentenced to life imprisonment, and acknowledged that no promises other than those in the plea agreement induced his plea.

We see no reason to grant the motion to withdraw simply because the defendant now faces a stiffer sentence than he would like, especially after he has failed to meet the condition precedent of cooperating with the government.

This would also be the case with the letter from the Assistant United States Attorney to Mr. Smith's attorney which estimated the

applicable guideline range if he were to decide to plead guilty. The letter clearly explains that the range of imprisonment stated therein was approximate and contingent upon a criminal history category of I. Def. Ex. 1 at 2. The plea agreement also explains that it contains "the full and complete terms and conditions of the agreement." Def.Ex. 2 at 6.

District courts do not have the aid of crystal balls which would enable them to foresee all factors that may be discovered by the probation office in preparation of the presentence report. Were we to grant Mr. Smith's motion we would be teetering at the edge of a slippery slope, where "any estimate of the guideline range that the district court would give in advance of the pre-sentence report might well turn out to be misleading and could be the basis for the contention that the guilty plea should be invalidated." *United States v. Henry*, 893 F.2d 46, 49 (3d Cir. 1990). We are mindful of our obligation to carefully analyze the particular facts of the present case, but we do not believe that the facts and circumstances of Mr. Smith's plea of guilty warrant the granting of his motion to withdraw his plea.

Mr. Smith also claims that his attorney, Bruce Carsia, never contacted him to prepare for trial. A defendant is not entitled to withdraw his guilty plea even though he claims that his attorney failed to familiarize himself with the facts of the case and did not investigate the possible defenses to the charges, especially if the defendant has been informed of the charges. *United States v. Rowe*, 677 F.Supp. 1327 (M.D.Pa.1987); *United States v. Pitino*, 887 F.2d 42 (4th Cir.1989) (withdrawal of plea denied because defendant failed to establish that attorney's lack of experience in federal criminal trial prejudiced him, that attorney misled him and his family, that attorney was unprepared for trial, or that attorney did not review evidence with defendant prior to plea). The hearing testimony clearly establishes that Mr. Carsia had numerous contacts with his client, Tr. 5, 27, that Mr. Smith was aware of the allegations in the indictment and understood the extent of the government's evidence against him, T. 26, and that Mr. Smith was satisfied with the job that Mr. Carsia had done for him. T. 5.

In conclusion, the granting of the motion in this case, on these facts, would simply be an open invitation to every defendant to plead guilty and then withdraw the plea if he were unhappy about what the guideline range turned out to be. Mr. Smith was as well advised as he could possibly be by the attorney for the government and by his own attorney prior to the guilty plea and by the court at the hearing where the guilty plea was entered.

An appropriate order will be issued.

### ORDER

AND NOW, to-wit, this 8th day of April, 1993, upon careful consideration of defendant Erskine Smith's motion to withdraw his guilty plea, and the evidence presented thereon, it is hereby ORDERED, ADJUDGED and DECREED that said motion be and hereby is DENIED.

IT IS FURTHER ORDERED that defendant Erskine Smith, II shall appear for sentencing on Thursday, April 15, 1993 at 9 a.m. in Courtroom 3, 8th Floor, U.S. Post Office and Courthouse, Pittsburgh, Pennsylvania.