1996 SD 45

**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Eric D. BAILEY, Defendant and Appellant.**

**No. 19283.**

Supreme Court of South Dakota.

Considered on Briefs March 14, 1996.

Decided April 24, 1996.

Mark Barnett, Attorney General, Jennifer K. Trucano, Assistant Attorney General, Pierre, for plaintiff and appellee.

Steven R. Binger, Sioux Falls, for defendant and appellant.

GILBERTSON, Justice.

[¶ 1] Eric D. Bailey appeals from a judgment convicting him of first degree manslaughter and from the trial court's order denying his motion to withdraw a guilty plea entered prior to sentencing. We affirm.

## FACTS AND PROCEDURE

[¶ 2] Anthony Rowe, was shot and killed during a struggle that occurred outside the Frontier Bar in Sioux Falls, South Dakota on April 17, 1994. On April 29, 1994, Eric D. Bailey was indicted by a grand jury on count one, first degree murder and count two, first degree manslaughter in the death of Rowe.

[¶ 3] The court appointed Sidney B. Strange, a Sioux Falls attorney, to represent Bailey. At the time of this appointment, Strange had over twenty-five years of substantial experience as a criminal defense attorney in both state and federal courts. His experience included defending many persons charged with homicide. The trial court granted Strange authority to hire a defense team for Bailey consisting of a private investigator, two firearms experts from Texas, a forensic pathologist, another lawyer, and a legal intern.

[¶ 4] Bailey was arraigned and pled not guilty to both counts. Preparation of Bailey's defense included travel by Strange or members of Bailey's defense team to Arizona, Louisiana, Texas, Kansas, Missouri, and throughout South Dakota. Pre-trial motions were filed on Bailey's behalf. Beginning October 3, 1994, a week was spent selecting a jury for trial. During this week, plea negotiations took place but no agreement was reached. After selection of the jury but before opening statements, Bailey moved to postpone trial due to newly discovered evidence. This motion was granted and a new trial date set for February 21, 1995.

[¶ 5] On February 13 and 14, 1995, Bailey, Strange, and the private investigator, Tim Mulloy, discussed prospective pleas and the ramifications of entering into a plea agreement. Bailey authorized Strange to contact the State's Attorney about the possibility of a plea bargain. The State's Attorney informed Strange he would need to speak with the victim's family first and would get back to Strange. On the morning of February 14, at approximately 7:30 a.m., the State communicated an offer of a plea bargain to Strange, who in turn communicated the offer to Bailey at approximately 8:15 a.m. The offer consisted of the State's agreement to dismiss the count one, first degree murder charge if Bailey pled guilty to count two, first degree manslaughter. This was to be an "open" plea, with both the State and Bailey free to recommend a sentence. By dropping the murder charge, upon a conviction Bailey would not be facing the possibility of the

death penalty or the alternative of a mandatory life sentence with no parole. The first degree manslaughter charge carried a maximum sentence of life without parole and imposition of a $25,000 fine but no mandatory minimum sentence. SDCL 22–16–15; SDCL 22–6–1(3).

[¶ 6] On the afternoon of February 14, at approximately 3:30 p.m., Strange communicated to the trial court that Bailey intended to plead guilty to manslaughter in the first degree. This was after Strange had spent two hours with Bailey discussing his rights and the consequences of a change of plea from not guilty to guilty. As the trial court found it had time available that afternoon, Bailey was brought to the Minnehaha County Courthouse where the trial court re-arraigned Bailey and accepted Bailey's plea of guilty. Sentencing was deferred pending completion of a presentence investigation.

[¶ 7] In conducting the presentence investigation, a court services officer visited with Bailey in his jail cell. Bailey advised the officer he felt he had been hurried into the plea, had not spent sufficient time with Strange, had been misadvised regarding the situation, and that he wished to withdraw his guilty plea. On March 27, 1995, Bailey filed a motion to withdraw his guilty plea. Bailey supported the motion with an affidavit in which he informed the trial court, among other things, 1) he had been hurried into the courtroom on February 14 when he had not yet made a firm decision on whether he would change his plea; 2) he was traumatized at the time and does not remember the proceedings; 3) he had had difficulty sleeping since the change of plea; 4) the guilty plea was not his own but actually his attorney's plea; and 5) his lack of education and intelligence interfered with his ability to enter a fully informed and voluntary plea. Bailey further affied that he "was forced to appear before the Court and enter a purported guilty plea without having nearly enough time to think things through for himself." He claimed he was "absolutely innocent" of the crime charged and had no memory of it. At Bailey's request, the trial court appointed substitute counsel for Bailey. Also at Bailey's request, the court ordered Bailey to undergo psychiatric examination.

[¶ 8] A hearing was held June 6, 1995 on Bailey's motion to withdraw his plea. The psychiatrist who examined Bailey, Dr. David Bean, testified that Bailey was competent to stand trial and competent to enter a plea. Dr. Bean testified Bailey was not suffering from any mental diseases or delusions, but that he was "intellectually impoverished" and tested for I.Q. in the mild mental retardation range. He further testified that Bailey may not have understood what the trial court was asking of him at his re-arraignment and if not, Bailey's answers would not be reliable. Dr. Bean also admitted Bailey may have understood the court's questions. Although present at this hearing, Bailey did not testify in support of his motion. After considering the testimony and evidence presented at the hearing, the trial court denied Bailey's motion. Bailey appeals raising the following issues:

1. Whether the trial court abused its discretion by denying Bailey's motion to withdraw his guilty plea?

2. Whether the trial court improperly admitted an affidavit by the State to establish prejudice?

### ANALYSIS AND DECISION

[¶ 9] **1. Whether the trial court abused its discretion by denying Bailey's motion to withdraw his guilty plea?**

[¶ 10] SDCL 23A–27–11 provides that:

A motion to withdraw a plea of guilty or nolo contendere may be made only before sentence is imposed or imposition of sentence is suspended; but to correct manifest injustice a court after sentence may set aside a judgment of conviction and permit the defendant to withdraw his plea.

[¶ 11] The withdrawal of a guilty plea before the imposition of sentence is *within the sound discretion of the trial court.* There is no absolute right to withdraw a guilty plea. *State v. Grosh,* 387 N.W.2d 503, 505 (S.D.1986). We review a trial court's refusal to permit a defendant to withdraw his guilty plea prior to sentencing under an abuse of discretion standard. "The term

'abuse of discretion' refers to a discretion exercised to an end or purpose not justified by, and clearly against, reason and evidence." *State v. Engelmann*, 541 N.W.2d 96, 100 (S.D.1995) (quoting *State v. Flying Horse*, 455 N.W.2d 605, 607–08 (S.D.1990)).

[¶ 12] When a defendant moves to withdraw a guilty plea prior to imposition of sentence, the trial judge's discretion in the matter should be exercised liberally in favor of withdrawal, unless it appears that the state has detrimentally relied upon the plea and the prosecution of the defendant has been thereby prejudiced. *State v. Lohnes*, 344 N.W.2d 686, 687 (S.D.1984). "When deciding whether to allow a criminal defendant to withdraw his plea, the trial court must look at the reasons why the plea is sought to be withdrawn and if the request to withdraw is obviously frivolous, the trial court need not grant it." *State v. Wahle*, 521 N.W.2d 134, 137 (S.D.1994) (quoting *Grosh*, 387 N.W.2d at 506).

[¶ 13] Bailey bears the burden of proving sufficient grounds to withdraw his guilty plea. *See United States v. Smith*, 818 F.Supp. 123, 126 (W.D.Pa.1993), *aff'd*, 14 F.3d 50, *cert. denied*, —— U.S. ——, 114 S.Ct. 1235, 127 L.Ed.2d 579 (1994) (Defendant who has pled guilty no longer enjoys presumption of innocence and, on motion to withdraw plea, bears burden of production and persuasion). He must state a persuasive reason why withdrawal should be permitted and that reason must show more than the mere desire to have a trial. *Grosh*, 387 N.W.2d at 506.

[¶ 14] Bailey claims the trial court abused its discretion in not granting his motion to withdraw his plea of guilty in view of his mental retardation, his assertion of innocence and the State's failure to produce evidence of prejudice. We address these contentions seriatim.

## [¶ 15] A. Bailey's mental capacity

[¶ 16] Bailey dropped out of school after the eighth grade and, by all accounts, he can barely read or write. The examination by Dr. Bean revealed Bailey lacks basic math skills and knowledge of our governmental system. Dr. Bean testified that Bailey's I.Q. score of 66 indicated mild mental retardation.[1] However, Bailey did understand and express knowledge of the basic functions of defense lawyers, prosecutors, the judge and jury, in a criminal case.

[¶ 17] Bailey's criminal record indicates he has had previous experience with plea negotiations and the consequence of entering a guilty plea. In 1987, he pled guilty to armed robbery in the State of Louisiana. As a result of this plea, Bailey was sentenced to six years of hard labor in that state's prison system. While incarcerated in the Minnehaha County jail, Bailey also revealed his knowledge of legal procedures by filing, *pro se*, a Title 42 USC § 1983 action against the county sheriff. Bailey also meaningfully participated, *pro se*, in disciplinary actions brought against him during his incarceration in the Minnehaha County jail.

[¶ 18] Sidney Strange, Tim Mulloy, Trial Judge Kean, and Dr. Bean were aware early on of Bailey's intellectual and educational limitations. Strange, Mulloy, Judge Kean, and Dr. Bean all indicated they took special care in posing questions to Bailey and relating information to him because of his limitations. Strange, Mulloy, Judge Kean, and Dr. Bean also all indicated that, though Bailey was difficult for them to understand in their early contacts with him, this difficulty subsided as they spent time with him.

[¶ 19] Attorney Strange and members of Bailey's defense team submitted payment vouchers to the court which indicated they had spent substantial time meeting with Bailey preparing for trial and discussing plea negotiations. Prior to the plea, Strange and

---

1. We note that other courts, addressing issues similar to those raised by Bailey to this Court, have acknowledged that:

   IQ alone, however, is not a definitive measure of retardation. "A diagnosis of mental retardation is based on multiple criteria, including measured intelligence (usually quantified as Intelligence Quotient), adaptive behavior level (sometimes quantified as a Social Quotient), and medical classification."

   *United States v. Masthers*, 539 F.2d 721, 724 n. 16 (D.C.Cir.1976) (quoting Roos, "Basic Facts About Mental Retardation," in *Legal Rights of the Mentally Handicapped*, p19 (Ennis and Friedman, Eds1973)).

his assistants read all documents, reports, and other items involved in this case to Bailey. Strange testified at the hearing, concerning Bailey's motion to withdraw his plea, that Strange had spent a total of nine to ten hours explaining Bailey's constitutional and statutory rights and the advantages and disadvantages of entering a guilty plea, including four to five hours in October 1994 and four to five hours in February 1995. On February 13, the discussion specifically revolved around what rights would be waived by entering a guilty plea. Strange stated that on February 14, he spent two hours with Bailey discussing his rights and the consequences of a plea. Strange noted that during these plea negotiations, both in October and February, he repeated himself several times and explained things at various levels of language utilization, going over the same concept three or four times until Strange was satisfied that Bailey understood what was being said. Strange testified he felt he had to satisfy himself on this account because in his experience, the trial court always asked him about it.

[¶ 20] The trial court had the opportunity to observe Bailey during the week-long jury selection and preparation for trial as well as during the two arraignments and the plea hearing. The court stated that as a result of its earlier observations and conversations with the defendant, the court was able to fully understand Bailey when the plea was entered on February 14, 1995. The transcript of this proceeding shows the trial court painstakingly explained what Bailey was giving up by pleading guilty and waiving his right to a trial. The court informed Bailey during the re-arraignment in February that if there was anything he did not understand, or if he had questions or needed additional time, Bailey should just "lean over and grab Mr. Strange's arm and I'll give you some more time." Twice thereafter, the court asked Bailey if he needed additional time.

Bailey answered both times in the negative. A review of the entire transcript reveals that after almost every statement made by the court, the court asked Bailey if he understood what the court just said. Bailey always answered that he did understand. Bailey's responses during the entire proceeding indicate his comprehension of the questions and do not support his claim to Dr. Bean that his responses were "programmed" by his attorney.

[¶ 21] Bailey cites our recent decision in *State v. Engelmann*, 541 N.W.2d 96 (S.D. 1995) in support of his position.[2] In that case, we reversed and remanded the denial of Engelmann's motion to withdraw his *Alford*[3] guilty plea to rape entered prior to sentencing. We determined that at the time he entered his plea, Engelmann's decision-making ability was significantly impaired by a serious mental disorder, of which his attorney and the trial court were unaware. Engelmann had been receiving psychiatric treatment two weeks prior to his pleading guilty and was also taking two medications, one of which could have interfered with his thought process. We found that suffering from the serious mental disorder was not a frivolous excuse and, as the State had failed to dispute a finding it would suffer no prejudice by a withdrawal of the guilty plea, Engelmann should have been permitted to withdraw his plea.

[¶ 22] The situation here is factually distinguishable from the unique set of factors that existed in *Engelmann*. The amount of time allowed Bailey and Engelmann to consider their rights and options is also dissimilar. Ten months ran from the time of Bailey's initial appearance until he changed his plea to guilty. There was no threat of additional charges if Bailey did not change his plea. Engelmann had only three weeks to consider what to plead. It was further made clear to Engelmann that if he did not accept a plea

---

2. We note that Mr. Strange was also Engelmann's counsel following the denial of Engelmann's first motion to withdraw his guilty plea.

3. As described in *Engelmann*, an *Alford* plea by a defendant is based on *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). Under such a plea, the defendant enters a plea of

guilty notwithstanding his assertion of innocence. "It allows a defendant the opportunity to avoid the risk of trial and obtain the benefit of a favorable plea bargain 'even if he is unwilling or unable to admit his participation in the acts constituting the crime.'" *Engelmann*, 541 N.W.2d at 101.

bargain, the State would impanel a grand jury which would potentially indict him with multiple rape counts beyond the charge he was currently facing.

[¶ 23] "Whether an accused is capable of making the 'reasoned choice' essential to the validity of a guilty plea and the waiver of constitutional rights such as the plea entails 'depends upon the particular facts and circumstances surrounding the case, including the background, experience, and conduct of the accused.'" *United States v. Masthers*, 539 F.2d 721, 726 (D.C.Cir.1976) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461, 1466 (1938)). This Court has previously held "we will look to the totality of the circumstances to determine whether a guilty plea was knowingly and voluntarily entered." *Lohnes*, 344 N.W.2d at 688. Bailey was found by Dr. Bean not to be suffering from any mental disorders or delusions, but was limited intellectually and educationally. Bailey has had life experiences which indicate to this Court he had an understanding of the proceedings and the consequences of entering a guilty plea. The record reflects that special care was taken by Bailey's attorney and the trial court to assure themselves Bailey fully understood the questions, the import of his answers and the nature of the proceedings against him. This provided Bailey with an adequate understanding to voluntarily and intelligently enter a guilty plea. On review of the entire record, we are satisfied that the trial court did not abuse its discretion in denying Bailey's motion to withdraw his guilty plea based on Bailey's mental status.

### [¶ 24] B. Assertion of Innocence

[¶ 25] Bailey also asserted by supporting affidavit that he is innocent of the crime of first degree manslaughter in the shooting of Anthony Rowe on April 17, 1994, has no memory of it, and therefore, should be permitted to withdraw his guilty plea. Courts have permitted the withdrawal of a defendant's guilty plea where there is no factual basis in the record to support it. *State v. Smith*, 189 Wis.2d 496, 525 N.W.2d 264, 267 (1995). However, self-serving testimony concerning a defendant's innocence by the defendant has not been found to provide a basis for permitting the withdrawal of a guilty plea. *Smith*, 818 F.Supp. at 127.

[¶ 26] In *Engelmann*, prior to arraignment, the defense attorney was only allowed to briefly inspect, and not even copy, the transcribed interviews with the purported victims. In contrast, the Bailey defense team of attorneys, experts and an investigator had traveled this State and throughout the country for months investigating the crime and obtaining evidence in support of Bailey's defense.

[¶ 27] In *Engelmann*, the defendant consistently asserted his innocence throughout the proceedings. Contrary to what occurred in *Engelmann*, we note that Bailey did not assert his innocence at his re-arraignment. Information Bailey provided to the trial court at the February re-arraignment does not comport with his present claim of innocence. The record in this case, which includes statements of several of Bailey's friends and relatives who were with him the night of April 17, 1994 and the following morning further belies Bailey's present claim of innocence. In addition, the trial court found a factual basis existed for entering the guilty plea. The trial court did not abuse its discretion in denying the motion to withdraw the guilty plea based on this assertion.

### [¶ 28] C. Prejudice to the State

[¶ 29] Bailey's final contention under Issue One is that the State failed to produce evidence it would be prejudiced by the trial court's granting his motion. Although we have previously stated that the trial court's discretion should be exercised liberally in favor of withdrawal unless the State has been prejudiced, this does not mean, *ipso facto*, that where the State fails to show prejudice, the withdrawal should be automatically granted. There is no absolute right to withdrawal of a guilty plea. *State v. Losieau*, 266 N.W.2d 259, 262 (S.D.1978). "While possible prejudice to the prosecution is ... a factor to be considered [when deciding a presentence motion to withdraw a guilty plea], absence of prejudice to the prosecution, by itself, is insufficient to mandate permission for withdrawal of a plea of guilty." *State v. Clark*,

108 N.M. 288, 772 P.2d 322, 326 (N.M.1989) (citing *United States v. Carr*, 740 F.2d 339, 345 (5th Cir.), *cert. denied*, 471 U.S. 1004, 105 S.Ct. 1865, 85 L.Ed.2d 159 (1985); *United States v. Saft*, 558 F.2d 1073, 1083 (2d Cir. 1977); American Bar Association Standards for Criminal Justice § 14–2.1 commentary at 52–53 (2d ed 1980)).

[¶ 30] Bailey moved to withdraw his guilty plea five weeks after it was entered. In that time, the State had prosecuted some of the witnesses to Bailey's criminal case. The State offered its showing of prejudice by affidavit from the state's attorney, accompanied by supporting documents. Further in support of its affidavit, the State asked the trial court to take judicial notice of the courthouse files of witnesses in the Bailey case who have been prosecuted by the State for other matters since Bailey pled guilty and the outcomes of those prosecutions. The State alleged some of these witnesses would now be hostile witnesses to the State's prosecution of Bailey should he be permitted to withdraw his guilty plea and stand trial. Further, one witness was given a suspended imposition of sentence on the condition that she testify at Bailey's trial. Since entry of Bailey's guilty plea, that condition has been removed from this witness' sentence and she has left the jurisdiction. The State argued her attendance at trial could no longer be assured. Other courts have determined "[t]he most common form of prejudice is the difficulty the Government would encounter in reassembling far-flung witnesses in a complex case...." *United States v. Barker*, 514 F.2d 208, 222 (D.C.Cir.1975).

[¶ 31] Bailey does not meet his burden of establishing sufficient grounds for permitting his plea to be withdrawn merely by claiming an absence of prejudice to the prosecution. Moreover, the State did produce evidence of prejudice. This contrasts with *Engelmann* where the trial court found no prejudice to the State and the State never disputed that finding.

### [¶ 32] 2. Whether the trial court improperly admitted an affidavit by the State to establish prejudice?

[¶ 33] Bailey objected to the admission of the State's affidavit on grounds that it consti-tuted inadmissible hearsay. SDCL 19–16–1(3). Bailey acknowledged that the records in the court system are not hearsay but that the hearsay arose in the inferences drawn by the State's Attorney implying prejudice. The trial court admitted the affidavit, stating it would disregard any evidence within the affidavit that should not be considered by the court when it made its decision. Bailey argues on appeal the trial court erred by not specifying which portions of the affidavit it was ignoring.

[¶ 34] Our standard of reviewing a trial court's evidentiary ruling is that of abuse of discretion. *State v. Woodfork*, 454 N.W.2d 332, 335 (S.D.1990); *State v. Bartlett*, 411 N.W.2d 411, 414 (S.D.1987); *State v. McNamara*, 325 N.W.2d 288, 291 (S.D.1982). Bailey has failed to show any abuse by the trial court. Further, we find nothing, in our review of the trial court's findings of fact and conclusions of law regarding possible prejudice to the State, that indicates the trial court considered anything it should not have when it made its decision to deny Bailey's motion to withdraw. When the matter is to be determined by the court, rather than a jury, the presumption is that improperly admitted testimony is disregarded. *In re R.S.S.*, 474 N.W.2d 743, 750 (S.D.1991). The courthouse records and the supporting documents filed by the State's Attorney are not hearsay evidence and the trial court is certainly permitted to draw its own logical inferences from its review of those documents.

### CONCLUSION

[¶ 35] We find no abuse of discretion in the trial court's denial of Bailey's motion to withdraw his guilty plea. We affirm.

[¶ 36] MILLER, C.J., and SABERS, AMUNDSON and KONENKAMP, JJ., concur.